Gary BUZA, Mark Adkins, Appellants
(Defendants below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 84S00–8612–CR–01040.

Supreme Court of Indiana.

Oct. 19, 1988.

Christopher B. Gambill, Terre Haute, for Gary Buza.

James W. Boswell, Terre Haute, for Mark Adkins.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Co-defendants Mark Adkins and Gary Buza were tried jointly on respective charges of Burglary, a Class B felony. Both men were convicted and sentenced to seventeen (17) years in prison. Adkins and Buza, in their direct appeal to this court, raise several issues which we consolidate and restate as follows:

1. trial court error in denying certain tendered instructions;

2. error in sentencing Adkins;

3. error in failing to discharge Adkins pursuant to his speedy trial motion;

4. error in allowing a witness to identify Buza in-court;

5. error in admitting a pair of gold hoop earrings into evidence; and

6. sufficiency of the evidence.

The facts most favorable to the verdict show that on January 5, 1986, Mary Fowler's residence in Terre Haute, Indiana, was burglarized between approximately 7:00 and 9:30 p.m. The house was ransacked and a large number of jewelry pieces were stolen. On the previous day Fowler arrived home to find a man leaving her front porch, and later that same day she answered the door to a different man asking for "Steve." Fowler told him he had the wrong house. These two men were later identified as Adkins and Buza.

Some time later Roland Gamie notified police his daughter, Roni Lewis, had been given some expensive jewelry by her boyfriend, Gary Buza. Description of that jewelry matched the description of some of the jewelry Fowler listed as missing. Based on this, police obtained a search warrant which included all jewelry Fowler thought was missing from her home. The warrant included Roni Lewis' residence and another home in Terre Haute.

The police conducted searches, but found none of the jewelry listed in the warrant. A detective did however find a watch and a pair of gold hoop earrings, and Lewis claimed she did not know to whom they belonged. Lewis allowed the officer to take the articles. Fowler later identified the earrings as hers.

On January 23, 1986 Lewis gave a statement to police indicating she saw Adkins and Buza in possession of a large quantity of jewelry on January 5, 1986. Earlier on the day of the burglary, Lewis and Buza visited her sister's home, which was next door to Fowler's. Twice during the visit Buza left and the second time returned with Adkins. All three then departed and went to Lewis' home. There Adkins and Buza pulled jewelry from their pockets and showed it to Lewis. They made comments to the effect Fowler had some "nice things" in her home. Lewis stated that the two denied burglarizing Fowler's home but did admit to burglarizing a residence further down the street.

I

■ The first issue we address on appeal is Adkins' contention the trial court erred in denying his tendered instructions No. 2 and No. 7. This court, when determining whether an instruction was properly refused, considers whether the tendered instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction was covered by other instructions which were given. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1161, *cert. den.* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851, citing *Hollon v. State* (1980), 272 Ind. 439, 441, 398 N.E.2d 1273, 1276. Adkins' Instruction No. 2 states: "If the State resorts to circumstantial evidence to

prove an essential element of the crime, all reasonable hypotheses of innocence must be excluded." However, the court gave a more complete instruction which reads:

### Court's Final Instruction No. 6

Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true conclusively establishes that fact.

Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn.

An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts.

It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof.

Where proof of guilt is by circumstantial evidence only, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of innocence.

A criminal conviction may be based solely on circumstantial evidence.

Adkins' instruction is a correct statement of the law and there is evidence in the record to support it. However, as the above instruction clearly shows, the court's instruction adequately covered it.

Adkins' Instruction No. 7 correctly states the standard of reasonable doubt in criminal trials and the defendant's presumption of innocence. The record shows the trial court again more than adequately covered it in Court's Final Instructions No. 2, No. 3, No. 7, No. 9, No. 10, and Defendant's Instruction No. 9, which was also given to the jury. Adkins presents no error here.

### II

■ The second issue Adkins raises is error in sentencing. He claims his sentence of seventeen years is manifestly unreasonable. We will not revise a sentence on appeal which is authorized by statute, except where such sentence is manifestly unreasonable in light of the nature of the offense and character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which sentence was imposed. *Crisler v. State* (1987), Ind., 509 N.E.2d 822, 823; Ind.R.App.Rev.Sen. 2.

The maximum sentence Adkins could have received is twenty years, therefore his sentence falls within the statutory limitations for a class B felony. IC 35–50–2–5. Adkins has a rather lengthy criminal history and the court noted this as the prime aggravating factor. Also, the victim stated the crime has disrupted her life, especially because she was going to sell the jewelry to help defray the cost of her daughter's education. We cannot say the sentence is unreasonable, and find no error in sentencing.

### III

■ Adkins next claims as error the trial court's failure to discharge him pursuant to his speedy trial motion. The State requested and was granted a continuance due to the absence of a material witness. The absence of an essential witness through no fault of the State has been held by this court to be good cause for extending the time period requirement for a speedy trial. *Mickens v. State* (1982), Ind., 439 N.E.2d 591, 595; *Fortson v. State* (1978), 269 Ind. 161, 167, 379 N.E.2d 147, 151. The continuance moved the trial only one day beyond the seventy day period as found in Criminal Rule 4(B). Under such circumstances, where the continuance arose in the context of Adkins' application for discharge under the speedy trial rules, the provisions of Criminal Rule 4(D) must control. This rule requires that the court be satisfied the State has made reasonable efforts to procure the missing evidence and there is just cause to believe it can be had within ninety days. The record shows the court made these two findings, and we find no error here.

In addition, as the State points out, Adkins failed to specify the grounds for his objection. He also makes his motion for

discharge for the first time on appeal. As this court held in *Lloyd v. State* (1983), Ind., 448 N.E.2d 1062, 1066, a request for dismissal or discharge provides an "enforcement mechanism" for Criminal Rule 4(B). "Failure to make a timely motion for discharge prior to trial constitutes a waiver of that right to discharge." *Id.* Therefore, even had there been a violation of Adkins' right to a speedy trial, he waived his right to appeal the issue.

### IV

■ Next, Appellant Buza contends the court erred by allowing Fowler to identify him in-court. He claims this identification was tainted by earlier identification procedures. More specifically, Buza attacks the earlier identification as being unduly suggestive because he was the only person to appear in both the photographic and live lineup procedures, and because Fowler identified him due to suggestions members of the police department made to her. Therefore, he states, there is no sufficient independent observation which would provide a valid in-court identification.

"The standard used to determine the admissibility of an in-court identification is whether from the totality of the circumstances, the identification procedure was 'so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.'" *Hazzard v. State* (1980), 274 Ind. 679, 680, 413 N.E.2d 895, 897. Discrepancies in a witness' accounts of the identification procedure itself do not require suppression of the in-court identification on the grounds of an impermissibly suggestive process. While inconsistencies in the evidence may affect the credibility of the witness, conflicts do not require a suppression of the identification based on suggestive procedure. *Id.* Also, an in-court identification is permissible, in spite of a prejudicial pre-trial identification, if an independent basis for the in-court identification exists. *Kusley v. State* (1982), Ind., 432 N.E.2d 1337, 1339, citing *Swope v. State* (1975), 263 Ind. 148, 157, 325 N.E.2d 193, 197, *cert. den.* 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100.

In the present case Fowler was allowed to identify Buza in-court as the man who knocked on her door the day before the burglary. Fowler testified that during the investigation Detective Bensinger showed her a photographic array and she immediately recognized Buza. She stated she wanted to "make sure" she made a proper identification. Therefore Bensinger arranged a lineup. Fowler again identified Buza, and then viewed a videotape of the lineup to be absolutely certain she chose the right man. Bensinger also testified and stated it was "probably correct" Buza was the only person from the photo-array who was also in the lineup.

Buza's attorney, present for the identification procedures, cross-examined Fowler about the videotaped version of the lineup. In response to his question "In following your observation of that video tape, did you state number 5 looks like him, it's hard. Do you recall saying that?" (sic) Fowler answered, "It could have been." Buza also infers the police suggested to Fowler Buza was the man they wanted. However, he states nothing to support this contention. From these facts we cannot say the procedures were so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Therefore, although we do not need to reach the question of whether there was a sufficient independent basis for identification, the fact that Fowler observed Buza face-to-face on her front porch in broad daylight the day before the burglary would provide the needed basis. We find no error here.

### V

■ The next issue is raised by both Adkins and Buza. They challenge the court's admitting a pair of gold hoop earrings into evidence. The State contends neither man has standing to challenge this evidence.

Based on information Roland Gamie gave police, a search warrant was obtained. Ronnie Lewis' apartment was one of the places authorized to be searched. Although the gold hoop earrings were not listed on the warrant, Lewis gave the de-

tective permission to take them. Fowler later identified them as hers.

Neither Adkins nor Buza challenge the search of the apartment, but rather the seizure of the earrings. The question under a Fourth Amendment analysis is whether either had a legitimate expectation of privacy with regard to those earrings. *Tobias v. State* (1985), Ind., 479 N.E.2d 508, 510; *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 898. Adkins and Buza carry the burden of establishing their standing to object. *Stout v. State* (1985), Ind., 479 N.E.2d 563, 567.

Although these specific earrings were not listed on the search warrant, Lewis claimed they were not hers. They were in fact stolen from Ms. Fowler. The question becomes then whether Adkins and Buza can claim a proprietary interest in the stolen earrings so as to challenge their admittance into evidence. In *Brown v. United States* (1973), 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208, the United States Supreme Court stated in a footnote that even if the defendants in that case had not previously sold the stolen property to the person in whose store it was found, "their 'property interest' in the merchandise was totally illegitimate." 4 LeFave *Search and Seizure*, § 11.3(C), (1987). It seems the same holds true for Adkins and Buza. It is also important to note that the men left the earrings at Lewis' and showed no intent to retrieve them. Buza earlier asked Lewis to give him back a watch and ring he had given her from the stolen items. Obviously, however, he and Adkins abandoned any interest they may have had in the earrings when they allowed her to keep them.

It is well-founded that the privilege against unlawful search and seizure is personal, and cannot be asserted to challenge the search or seizure of another person's property. *Leonard v. State* (1968), 249 Ind. 361, 365, 232 N.E.2d 882, 885; *Johnson,* 472 N.E.2d at 898. Neither Adkins nor Buza has shown they have a legitimate expectation of privacy in the earrings seized. Therefore they have not carried their burden of proving they have standing to challenge their admittance into evidence. We find no reversible error.

Of note is the case of *Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, which seemingly suggests a different result. There, a similar challenge to a seizure of stolen goods was made on the ground the seizure exceeded the scope of the warrant. The Indiana Court of Appeals agreed and reversed the trial court. The opinion acknowledges the seized goods were stolen and therefore not the defendant's property. It also states, however, that the parties did not raise the standing issue and the court did not address it. The result in *Hewell* therefore is not controlling in the present case.

### VI

■ The final issue we address, raised by both Adkins and Buza, is whether the evidence is sufficient to support their convictions. When sufficiency is raised on appeal, this court may neither reweigh the evidence nor judge the credibility of witnesses. We look to that evidence most favorable to the State and determine whether there is substantial evidence of probative value to support the verdict. If there is, the verdict will stand. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672.

In this case, Lewis, Buza's girlfriend, testified she and Buza visited her sister in early January in the late afternoon or early evening. The sister lived in the apartment adjacent to Fowler's. During the visit, Buza left twice and the second time returned with Adkins. Lewis, Buza, and Adkins then left and went to Lewis' apartment where the two men pulled large amounts of jewelry from their pockets. Lewis' description of a number of these pieces matched those Fowler reported missing. Also, Adkins and Buza made comments about the "nice things" Fowler had, although they denied burglarizing her home. In addition, Fowler identified Adkins and Buza as having separately come to her home one day prior to the burglary.

Although much of the evidence is circumstantial, a conviction may be sustained by circumstantial evidence alone. *Isom v.*

*State* (1986), Ind., 501 N.E.2d 1074, 1075. This evidence need not exclude every hypothesis of innocence, provided the jury could find from the evidence and its inferences guilt beyond a reasonable doubt. *Evans v. State* (1986), Ind., 495 N.E.2d 739, 740. We find the evidence sufficient to uphold the convictions.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.