**Verle SLOAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 52A02–9406–CR–312.

Court of Appeals of Indiana.

Aug. 10, 1995.

Transfer Denied Oct. 25, 1995.

Katherine C. Liell, Liell & McNeil, Wabash, for appellant.

Pamela Carter, Attorney General of Indiana, Suzann Weber Lupton, James A. Joven, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Verle Sloan was convicted of Child molesting,[1] a Class B felony, following a jury trial. He appeals his conviction, alleging that evidence of his other molestations of the victim was improperly admitted and that the State failed to disclose the existence of a rebuttal witness.

We reverse.

## ISSUES

We restate the issues for our review as:

1.  Whether the admission of evidence of Sloan's other molestations of the victim was reversible error?

2.  Whether the State's failure to disclose a rebuttal witness was reversible error?

## FACTS

The facts most favorable to the judgment of conviction show that in September of 1991, Donald Davis, principal of the North Miami Elementary School, summoned eleven-year old S.S. into his office and asked about her personal problems. S.S. told Davis that her father, Verle Sloan, was molesting her and had been doing so since she was five years old. Davis reported S.S.'s accusations, and she was removed from the Sloan household.

Sloan was charged with four counts of molesting his daughter: Count 1 charged that he had committed sexual intercourse with her in July 1991; Count 2 charged that he had committed deviate sexual conduct with her in July 1991; Count 3 charged that he had committed sexual intercourse with her in August 1991; and Count 4 charged that he had committed deviate sexual conduct with her in August 1991. Sloan was first tried in February 1993. The jury found Sloan not guilty of Counts 2, 3 and 4, but was unable to reach a verdict on Count 1. Accordingly, the trial court declared a mistrial on Count 1.

Before the retrial on Count 1 in December 1993, the State gave notice that it intended to introduce evidence that Sloan had molested S.S. on occasions other than the charged date. Sloan moved in limine to exclude all evidence of any alleged molestations other than the July 1991 sexual intercourse charged in Count 1. The motion in limine was denied and at trial, over Sloan's timely objection, S.S. testified to multiple molestations by Sloan, beginning when she was five and continuing, for approximately six years, until August 1991. According to the victim, those molestations consisted of both anal and vaginal intercourse.

The victim specifically described one incident of anal intercourse which she claimed had occurred in July 1991, immediately after the charged vaginal intercourse. The anal intercourse described by the victim had been the basis for the deviate sexual conduct charged as Count 2 in Sloan's first trial; a charge on which the jury found Sloan not guilty. In both trials Sloan testified in his own defense, denying that he had ever molested his daughter.

Sloan was convicted and given a ten-year sentence, with two years suspended and two years probation. This appeal followed.

## DISCUSSION AND DECISION

### Issue One: Evidence of Extraneous Misconduct

In response to a perceived need to bolster the testimony of victims, particularly solitary child molesting victims, our appellate courts

---

1.  *See* IC 35–42–4–3(a) (1988 Ed.).

fashioned what became known as the depraved sexual instinct exception to the general rule that excluded evidence of the accused's extraneous bad acts. *See Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1335. This exception allowed the admission of evidence of certain kinds of extraneous sexual misconduct in prosecutions for incest, sodomy, criminal deviate conduct and child molesting. *Id.*

■ In *Lannan,* our supreme court abolished the depraved sexual instinct exception and replaced it with Fed.R.Evid. 404(b).[2] *Id.* at 1339. Pursuant to that rule, evidence of an accused's extraneous bad acts is no longer admissible to prove a depraved sexual instinct, but "such evidence may be admissible *despite its tendency to show bad character or criminal propensity,* if it makes the existence of an element of the crime charged more probable than it would be without such evidence." *Id.* (quoting *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872–73; emphasis in original).

Fed.R.Evid. 404(b), adopted in *Lannan,* reads:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

*Lannan,* 600 N.E.2d at 1336, n. 4.[3]

■ We have adopted a four-part test to evaluate the admissibility of evidence under Rule 404(b); this test requires that the evidence:

"(1) be directed toward proving a matter in issue other than the defendant's propensity to commit the crime charged, (2) show that the prior act is similar enough and close enough in time to be relevant to the matter in issue, (3) be such that a reasonable jury could find that the act occurred and that the defendant committed the act, and (4) meet the requirement of Rule 403 that the evidence's probative value not be substantially outweighed by the danger of unfair prejudice."

*Fisher v. State* (1994), Ind.App., 641 N.E.2d 105, 108, *trans. denied* (quoting *United States v. Schweihs* (7th Cir.1992), 971 F.2d 1302, 1311).

At trial, S.S. testified that she had first been molested by Sloan when she was five years old, and that he had continued to molest her about twenty times a year for the next six years. The victim also testified that shortly after Sloan had molested her through vaginal intercourse as the charged incident, he also engaged in anal intercourse with her. This act of anal intercourse was the basis of the deviate sexual conduct charged in Count 2 of the original information, one of the charges of which Sloan was acquitted. *Record* at 636. We will separately discuss the admissibility of the victim's testimony about the six years of prior molestations and the subsequent anal intercourse.

### A. Prior Molestations

At trial, the State offered the victim's testimony that Sloan had molested her for six years as evidence of Sloan's common scheme or plan to exploit and sexually abuse her. *Record* at 249, 441, 463. Sloan argues that the victim's testimony was not evidence of a common scheme or plan and, therefore, was not directed toward proving a matter in issue other than his propensity to commit the charged crime.

■ The common scheme or plan exception has two branches: the first permits

---

**2.** Effective January 1, 1994 our supreme court adopted the Indiana Rules of Evidence, which included Federal Rule 404(b).

**3.** Ind.Evidence Rule 404(b) is the same as the federal rule, except that the state rule omits opportunity as a listed purpose for the admission of extraneous bad acts evidence. Because Sloan was tried after *Lannan* but before the effective date the Indiana Rules of Evidence were adopted, we apply the federal rule here.

proof of identity by showing that the accused committed other crimes with identical *modus operandi;* the second permits proof of an uncharged crime as evidence of a preconceived plan which included the charged crime. *Lannan,* 600 N.E.2d at 1339. Sloan's sole defense to the charged crime was that he had not molested the victim; if the molestation had occurred, Sloan's identity as the molester was never in dispute. Consequently, the victim's testimony about Sloan's prior molestations, and the contemporaneous anal intercourse, would be admissible only "to demonstrate the common plan or scheme of criminal activity from which the accused originated the charged crime." *Id.* (quoting *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1346). This branch of the common scheme or plan exception "is also known as the theory of *res gestae,* under which the state is allowed to present evidence that completes the story of the crime in ways that might *incidentally reveal* uncharged misconduct." *Lannan,* 600 N.E.2d at 1339 (footnote omitted; emphasis added). Our supreme court later explained that:

> "The res gestae branch of the common scheme or plan exception allows admission of prior uncharged acts that are evidence of a preconceived plan, which included the charged crime. The prior offenses 'must tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and charged crime.' *Malone,* 441 N.E.2d at 1347. In *Lannan,* we further elaborated on this exception. The Court held that evidence of uncharged crimes falls within the res gestae exception where each of those crimes was part of an *uninterrupted transaction. Lannan,* 600 N.E.2d at 1340 (citing *Wilson v. State* (1986), Ind., 491 N.E.2d 537) (alteration in original)."

*Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129–30. There is no evidence to establish that Sloan's molesting of the victim for six years was pursuant to any preconceived plan. Nor could monthly molesting which contin-

ued for six years constitute an uninterrupted transaction.

Perhaps with these weaknesses in mind, the State on appeal has abandoned its common scheme or plan argument for the admissibility of evidence that Sloan molested the victim for six years before the charged incident. In its appellate brief, the State argues that such evidence was admissible to demonstrate the relationship between the parties. *Appellee's Brief* at 10.

In support of its argument that evidence of Sloan's prior molestation of the victim is admissible to show the relationship between the parties, the State cites *Thompson v. State* (1993), Ind.App., 625 N.E.2d 1322. The State's argument continues:

> "Here, evidence of the many identical prior assaults were [sic] admissible to demonstrate the relationship between the parties. A similar rationale justified the admission of evidence of prior molestations of a child victim in the case of *Thompson v. State, supra.* There, as here, the victim testified that the defendant began hugging her in a "funny" manner. *Id.* at 1324. The child testified that these touchings progressed in nature and severity, culminating in multiple acts of sexual intercourse. *Id.* This court determined that the prior history between the parties was admissible to " 'to [sic] show the relationship between the parties.' " *Id., quoting Price v. State* (1993), Ind., 619 N.E.2d 582, 584."

*Appellee's Brief* at 10.

The State's quotation from *Thompson* is incomplete and misleading. There, we held that:

> "Our supreme court was recently presented with a challenge to the admission of evidence pursuant to the newly adopted rule of evidence in *Price v. State* (1993), Ind., 619 N.E.2d 582, an appeal of a murder conviction. The court held that the defendant's prior acts of violence against his wife were admissible "to show the relationship between the parties *and appellant's motive and intent in the commission of the crime."*

*Thompson,* 625 N.E.2d at 1324 (emphasis added). The underlined portions of the above quotation are those which the State omitted without indicating that omission through ellipses. There is also no evidence in the record that Sloan ever hugged the victim in a "funny" manner.

Our holding in *Thompson* that the accused's prior bad acts may be admissible "to show the relationship between the parties and [his] motive and intent[ ]" is based upon that same holding by our supreme court in *Price. Thompson,* 625 N.E.2d at 1324. In our review of *Price* and the two cases upon which it relies, *King v. State* (1987), Ind., 508 N.E.2d 1259 and *Haggenjos v. State* (1982), Ind., 441 N.E.2d 430, we find that the evidence of the accused's extraneous bad acts was admitted to show his motive and intent; the relationship between the accused and the victim was relevant only to that motive and intent. *King,* 508 N.E.2d at 1261 ("While prior acts of misconduct are generally inadmissible, proof of a defendant's prior assault or battery upon, or threats made to, a homicide victim are admissible to show motive or intent."); *Haggenjos,* 441 N.E.2d at 432 (evidence of accused's harassment of victim tends to show motive).

■ Here, neither Sloan's motive nor his intent in molesting the victim were ever at issue. Because Sloan's motive and intent were not actually at issue, neither may serve as an excuse for the admission of his extraneous bad acts. *See Pirnat v. State* (1993), Ind.App., 612 N.E.2d 153, 156.

Finally, the State argues that the victim's testimony of prior molestations was admissible because it tended to prove that Sloan had the opportunity to molest her. This argument was made for the first time in Oral Argument[4].

■ Sloan's opportunity to molest the victim during July 1991, the time of the charged incident, was placed into issue when Sloan denied that he had such an opportunity, and when he introduced evidence that he had not been alone with the victim during that month. The State, however, has never explained how Sloan's opportunity to molest

the victim in July 1991 was proved by other molestations occurring as much as six years earlier. We find that the evidence of prior molestations has such a slight tendency to prove that Sloan had an opportunity to molest the victim in July 1991 that its probative value is substantially outweighed by the danger of unfair prejudice to Sloan and, therefore, its admission was error. *See Fisher,* 641 N.E.2d at 108.

### B. Subsequent Anal Intercourse

Although the victim's testimony that Sloan had molested her for six years does not appear to be the sort of uninterrupted transaction that our supreme court has held falls within the *res gestae* exception, her testimony about the anal intercourse which occurred immediately after the charged vaginal intercourse does. Sloan argues that the victim's testimony about the anal intercourse was inadmissible, even though it may fall within the *res gestae* exception, because it had been the basis of a prior criminal charge of which he was acquitted.

In *Little v. State* (1986), Ind., 501 N.E.2d 412, the accused was charged with rape and, at trial, the State offered evidence that he had committed a similar rape approximately sixteen years before; because of similarities between the two rapes, evidence of the prior rape was offered to prove Little's identity as the second rapist. Little objected that the evidence of the first rape was inadmissible because he had been acquitted of the charge. Our supreme court held that the collateral estoppel doctrine prevented the State from relitigating facts necessarily established against it by Little's acquittal in the first trial, and remanded the case to the trial court to review the record of the first trial. *Id.,* at 415. The trial court was to vacate Little's conviction and order a new trial if it concluded that an issue of fact determined against the State in the first trial was relitigated by it in the second; the evidence supporting the issue which the State attempted to relitigate in Little's second trial would then be excluded in his retrial on the second rape charge. *Id.* On remand, the

---

4. We heard oral argument on June 22, 1995.

trial court determined that Little's second trial had not involved the relitigation of an issue decided against the State when Little was acquitted in the first trial. *Little v. State* (1991), Ind., 580 N.E.2d 675, 676. Our supreme court, however, disagreed, vacating Little's conviction and remanding the case for a new trial. *See id.*

Here, Sloan has provided us with a transcript of his first trial as part of the record; we are thus able to review that record to determine whether collateral estoppel barred evidence of the anal intercourse at Sloan's second trial, making a remand unnecessary. Through that review we find that the contested evidence in the second trial showing that Sloan had engaged in anal intercourse with his daughter was an issue determined by his acquittal in the first trial. The State is collaterally estopped from relitigating this issue, and its attempt to do so is error.

## C. Harmless Error

Even if the evidence of Sloan's extraneous bad acts was inadmissible, the State argues, its admission was harmless because of the ample evidence of his guilt. Sloan responds that the victim's testimony of prior molestations, including incidents alleged to occur when she was only five years old, was highly prejudicial and swayed the jury's verdict. Our supreme court has recognized the potential prejudice in this type of evidence, warning that:

> "Admission of prior uncharged misconduct [implies] that the defendant is of bad character and poses the danger that the jury will convict solely upon this [implication]. Similarly, authoritative commentators have noted that the admission of uncharged misconduct may weigh heavily against a defendant, even becoming a dispositive factor in conviction. *See* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 1:02 at 4 (1984–1991)."

*Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 797 (citation omitted).

In assessing the probable impact upon the jury of evidence of the accused's prior molestations of the victim and of another child, the Court in *Lannan* explained that "[o]rdinarily, evidence of uncharged crimes of the character introduced in this case could be said to have a major impact on the jury." *Id.* at 1341. The Court concluded, however, that the extraneous bad acts evidence did not mandate reversal of the conviction because an incriminating declaration made by Lannan and corroborating testimony of a third party greatly lessened the impact of the improperly admitted evidence on the jury. *Id.* In the record of Sloan's trial, we find neither incriminating declarations nor corroborating testimony by third parties. Our assessment of the probable impact of the improperly admitted evidence upon the jury here is that the error was not harmless; reversal, therefore, is required.

The State's repeated discovery of new reasons for the admissibility of the evidence of Sloan's extraneous bad acts, and its consequent abandonment of each of its previous reasons, suggests that such evidence was actually offered to prove Sloan's bad character. This suggestion is reinforced by the use the State made of this evidence in final argument: "We're talking about a very distasteful crime being perpetrated on her time and time again over many years." *Record* at 399. "[S]he testified her father molested her time and time again from the age of five and a half." *Record* at 400.

view Rule 404(b)'s exceptions to the rule excluding evidence of the accused's extraneous bad acts as examples of legitimate purposes for which evidence of such acts may be offered into evidence, and not as an inventory of excuses used to justify the admission of that type of evidence when the true purpose of its admission is to prove the accused's bad character. To introduce extraneous bad acts evidence, the proponent of the evidence must articulate a rational and legitimate connection between the evidence and some matter actually at issue in the case. Where, as here, the proponent is unable to demonstrate such a connection, it is likely

that none exists and the true purpose of the evidence was the forbidden one of proving the accused's bad character.

## Issue Two: Admissibility of Rebuttal Testimony

At both trials, Sloan called Steven Wagner as a witness. Wagner, who had been the victim's school bus driver when she lived with the Sloans, testified that the victim had a reputation for untruthfulness. Several other witnesses called by Sloan in both trials also testified to the victim's bad reputation for truthfulness. At the second trial, the State called Diane Winters as a rebuttal witness; Winters had not testified at Sloan's first trial. Winters, who was the victim's school bus driver after the victim left the Sloan household, testified that the victim had a good reputation for truthfulness.

Sloan objected to Winters' testimony because he had requested a list of the State's witnesses and Winters had not been listed as a potential witness. The State admitted at trial that it had knowledge of Winters as a potential witness at least a month before trial, but denied that it had a responsibility to notify Sloan of its potential rebuttal witnesses.

▮▮ In *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, our supreme court held that "the nondisclosure of a rebuttal witness is excused only when that witness was unknown and unanticipated; known and anticipated witnesses, even if presented in rebuttal, must be identified pursuant to a court order, such as a pre-trial order, or to a proper discovery request." *Id.*, 605 N.E.2d at 179. The Court noted that prior to its decision in *McCullough*, the case law requiring the disclosure of rebuttal witnesses was not clear and that exclusion of a rebuttal witnesses' testimony before the law was clarified was too harsh a penalty; once the rule was clearly established, however, then exclusion of the undisclosed rebuttal testimony would not be too harsh a penalty. *Id.*, 605 N.E.2d at 181. Although *McCullough* was a civil case, we do not believe that civil litigants should be· afforded more protection than criminal defendants; consequently we conclude that its rule regarding disclosure of

rebuttal witnesses applies equally in criminal prosecutions.

▮▮ The *McCullough* rule was clearly established well before Sloan's second trial. The State had an obligation to disclose its rebuttal witness to Sloan, and it failed in that obligation; the failure was error.

The State contends that this error also was harmless because Sloan was allowed to interview Winters for a few minutes before she testified. Sloan responds that if he had known Winters was a possible rebuttal witness, then he might not have raised the victim's reputation for truthfulness as an issue by calling Wagner to testify.

▮▮ Because we reverse Sloan's conviction due to the erroneous admission of evidence of his extraneous bad acts, we do not reach the issue of whether the State's concealment of its rebuttal witness constitutes reversible error. We observe, however, that in *McCullough*, our supreme court strongly condemned the concealment of known and anticipated rebuttal witnesses; such condemnation implies that such concealment should rarely be found to be harmless error. Where, as here, the error cannot be cured by giving the surprised party a few minutes to interview the witness or by a continuance, the trial court should give careful consideration to excluding the concealed evidence.

Reversed.

RILEY, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur but deem it appropriate to comment with regard to the majority opinion concerning the rebuttal testimony of Diane Winters.

Even the line of cases represented by *Chatman v. State* (1975) 263 Ind. 531, 334 N.E.2d 673, as adopted by our Supreme Court in *McCullough v. Archbold Ladder Co.* (1993) Ind., 605 N.E.2d 175, do not require disclosure of a possible or even a prospective rebuttal witness unless the party calling the

witness could be expected to anticipate the need for rebuttal. Such anticipation necessarily depends upon what is known to be the evidence likely to be submitted by the other party.

As stated in *McCullough, supra:*

"[T]he very nature of a trial gives rise to the likelihood that issues will be raised during the defendant's case which the State could not logically anticipate, and that the State 'is permitted to seek out and call persons to rebut hitherto-unexpected claims.'" 605 N.E.2d at 178 (citing *Smith v. State* (1990) Ind., 553 N.E.2d 832, 835).

The rub lies in whether or not the rebuttal testimony is truly anticipated.

A party should not be precluded from submitting rebuttal evidence if, prior to trial, its prospective use was conjectural or speculative. In *Palmer v. State* (1994) 4th Dist.Ind. App., 640 N.E.2d 415, our court took an even more expansive view toward permitting undisclosed rebuttal evidence, holding that allowing such testimony was not reversible unless non-disclosure was "an intentional act of bad faith on the part of the State." 640 N.E.2d at 421.

I would hold that disclosure is not necessary unless the party has reason to know that the opposing party will more likely than not produce evidence making the rebuttal appropriate. That was clearly the case here. The State had an obligation to disclose Winters as a prospective rebuttal witness. For this reason, I concur as to Issue Two. I fully concur as to Issue One.