Joseph E. SUNDLING, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 44A04–9606–CR–230.

Court of Appeals of Indiana.

May 15, 1997.

Rehearing Denied July 10, 1997.

Eugene C. Hollander, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Phillip D. Hatfield, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Joseph E. Sundling appeals his conviction by jury on three counts of child molestation as class B felonies.[1]

---

1. Ind.Code 35–42–4–3.

## ISSUES

I. Whether Sundling was denied the right to a speedy trial.

II. Whether the evidence was sufficient to establish territorial jurisdiction with respect to one count of child molestation.

III. Whether the trial court erred in admitting evidence of other crimes, wrongs, and acts.

## FACTS

The facts most favorable to the jury's verdict reveal that in 1991, Sundling became acquainted with Dan and Teresa Lovell, who lived in Sturgis, Michigan, and Mrs. Lovell's two minor children from a previous marriage, B.W. and his younger brother, A.W. The Lovells and their children became friends with Sundling, and after Sundling lost his job in 1994, he lived with the family while working on their house.

On November 18, 1994, Sundling agreed to babysit B.W. and A.W. for the Lovells. After stopping at a gas station to get some snack food, Sundling took B.W., A.W., and two other children to the Super 8 Motel in LaGrange, Indiana. Ten year old B.W. testified that, while at the motel, Sundling "sucked on [his] weenie" when the other children were sleeping. (R. 493). In clarifying this statement, B.W. further testified that his penis was touched by Sundling's hand and mouth. B.W. was nine years of age at that time.

On March 25, 1995, Sundling again took B.W. and A.W. to the same motel in Indiana to sleep overnight. On this second occasion, two different children, C.S. and J.B., were present. B.W. testified that Sundling again fondled and performed oral sex on him while he was nude. At trial, Shirley Weidler, an employee of the Super 8 Motel, identified ledger cards showing that Sundling had registered at the motel on both November 19, 1994 and March 25, 1995. The evidence is undisputed that the only occasions where Sundling, B.W., and A.W. stayed at a motel in Indiana were on these dates.

On March 28, 1995, Denitta Smith informed Mrs. Lovell that Sundling had had oral sex with several boys, including B.W., A.W., and Smith's own son C.S. After being questioned, B.W. and A.W. told their mother

that Sundling had touched and sucked on their penises. At trial, eight year old A.W. also testified that his "private parts" were touched by Sundling, who used both his mouth and hands. However, his testimony was very confusing as to the specific location and date of said touching. Mrs. Lovell initially went to the police post in White Pigeon, Michigan, but when it appeared that the alleged criminal conduct had occurred in Indiana, the Michigan State Police contacted the LaGrange County Sheriff's Department, which initiated its own investigation.

Sundling was charged with three counts of child molestation: Count I alleged Sundling molested B.W. on March 25, 1995, and Counts II and III alleged Sundling molested B.W. and A.W., respectively, on or about August 18, 1994 to September 9, 1994. The informations as to Counts II and III were amended alleging the molestations occurred on or about November 18 or 19, 1994. Sundling was subsequently convicted by jury trial of all three counts. Other facts relevant to this appeal are provided as necessary.

## DECISION

### I. Right to Speedy Trial

■ Sundling was charged in St. Joseph County, Michigan in April of 1995. Although the Indiana charging informations in this cause were filed on April 13, 1995, Sundling was not returned to Indiana for his initial hearing until October 6, 1995. On October 16, 1995, Sundling filed a motion for an early jury trial. At a pre-trial hearing conducted on October 25, 1995, the trial court set the cause for trial on December 12, 1995, which was within the 70 days of October 16, pursuant to Ind.Crim. Rule 4(B)(1).[2] On December 12, prior to the commencement of jury selection, Sundling's counsel filed a motion to withdraw, a motion to dismiss, and a motion for a continuance, all alleging that the State had failed to comply with the trial court's discovery orders. Just prior to voir dire, the trial court considered these motions, and stated to the potential jurors as follows:

> We've been engaging in the discussion of various motions. What we're going—what

2. Crim.R. 4(B)(1) provides: "If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if

not brought within seventy (70) calendar days from the date of such motion . . ."

our plan is is to pick the jury today, and that will take some time. The trial itself will be conducted on February 1 and 2, which means you'll be picked today and you'll be brought back in February to—uh—participate.

(R. 345). After the prospective jurors were selected and sworn, the trial court, without objection by Sundling, recessed the trial until February 1, 1996.

Sundling now contends that he should be discharged because his right to an early trial pursuant to Crim.R. 4(B)(1) was violated. Specifically, Sundling contends that he was denied his right to receive a trial within the 70-day time limit because the trial court continued the case beyond the 70-day time limit after the jury had been selected and sworn.

■ Assuming Sundling's right to a speedy trial pursuant to Crim.R. 4(B)(1) was violated, he may not make his motion for discharge for the first time on appeal. *Scholar v. State*, 626 N.E.2d 547, 549 (Ind.Ct.App. 1993); *Buza v. State*, 529 N.E.2d 334, 337 (Ind.1988). The defendant waives review of this issue on appeal if he does not make a motion for discharge or motion for dismissal prior to trial. *Id.*; *Lloyd v. State*, 448 N.E.2d 1062, 1066 (Ind.1983). In *Lloyd*, our supreme court stated that such a request provides an enforcement mechanism for Crim.R. 4(B) and a defendant's failure to attempt to enforce his request for a speedy trial waives any issue thereon. *Id.* In this case, Sundling did not move for discharge based on his October 16, 1995 speedy trial motion prior to trial. Furthermore, we can find no indication in the record that Sundling made a timely objection to the trial court's bifurcation of the trial proceedings, which recessed the cause beyond the 70-day limit permitted by the rule. Thus, Sundling has waived review of this issue.

## II. *Territorial Jurisdiction*

■ Sundling next contends that his conviction regarding Count III, the alleged molestation of A.W., should be reversed because the trial court lacked territorial jurisdiction. Sundling basically contends that the State failed to prove that he molested A.W. in Indiana. We agree.

■ A person may be convicted of a crime in Indiana if either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana. *See* Ind. Code 35-41-1-1(a)(1); *McKinney v. State*, 553 N.E.2d 860, 862 (Ind.Ct.App.1990). In *McKinney*, this Court stated:

> Territorial jurisdiction is not necessarily thought of as an element of a crime. Nevertheless, the territorial jurisdiction is a fact that must be established. Indiana Statutes do not define jurisdiction as an element of the offense; however, where the law has established the necessity of a certain fact for an existence of that fact is treated much like an element of the offense. In this case then territorial jurisdiction is an element of the offense that must be proved by the state.

*Id.* (citations omitted). *McKinney* concluded that the State must prove territorial jurisdiction beyond a reasonable doubt. *Id.* at 863.

Our inquiry now turns to whether there was sufficient evidence to prove territorial jurisdiction beyond a reasonable doubt. When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id.* If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind.1993).

An examination of the record reveals that there is no evidence that A.W. was molested by Sundling in Indiana. The State contends that the trial court relied upon B.W.'s testimony regarding the location of Sundling's alleged molestation of A.W. However, B.W.'s testimony merely established that A.W. and two other children were present at the Motel 8 in LaGrange, Indiana at the time B.W. was molested. Thus, although the prosecuting attorney may have established that A.W. was present in the motel rooms during the molestation of B.W., the record is devoid of any evidence that Sundling also molested A.W. at the Super 8 Motel in Indiana. Specifically, neither B.W. nor A.W.

testified that Sundling molested A.W. while at the motel in Indiana. To the contrary, A.W. testified that Sundling did not touch him at the Super 8 Motel in Indiana, but at a house in Sturgis, Michigan. Therefore, we must reverse and dismiss Sundling's conviction for molestation of A.W. for lack of territorial jurisdiction.

### III. *Evidence of Other Bad Acts*

During the December 12, 1995 voir dire proceedings, Sundling's attorney asked prospective jurors various general questions regarding whether they understood that the testimony of small children could be manipulated by parents, police and therapists. After the prospective jurors were selected and sworn, the trial was recessed until February 1, 1996. On January 16, 1996, the State filed its notice to offer evidence, pursuant to Ind.Evidence Rule 404(b), alleging that Sundling's counsel indicated during voir dire that the defense would be that the children were coached or were otherwise fabricating the facts regarding the incidents of molestation. In its notice, the State listed the names of five additional witnesses. On February 1, 1996, a preliminary hearing was conducted, after which, the trial court concluded that the 404(b) evidence would be admissible for the sole purpose of determining whether "the witness' testimony may be fantasized." (R. 446).

■ At trial, three children were permitted, over Sundling's continuing objections, to testify to uncharged acts of molestations allegedly committed by Sundling.[3] Eleven year old J.G. testified that Sundling touched his penis on two separate occasions while at different motels in the company of A.W. and B.W. Ten year old A.B. testified that Sundling touched on his "private parts" while staying overnight (at an unspecified location) with B.W. and A.W. (R. 624). Six year old C.S. testified that Sundling had previously touched his penis while at a motel with B.W., A.W., and another child. C.S. further testi-

fied that Sundling put his mouth near his private part and "blowed on it." (R. 633).

Sundling contends that the trial court erred in permitting these three victims to testify regarding other acts of sexual misconduct. According to Sundling, the trial court committed reversible error because the evidence of Sundling's other bad acts does not fit into any of the various exceptions to Evid.R. 404(b). We agree.

■ The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon abuse of that discretion. *Johnson v. State,* 671 N.E.2d 1203, 1205 (Ind.Ct.App. 1996). Evid.R. 404(b), which has governed the admittance of evidence of other crimes, wrongs, or acts in Indiana since its adoption in *Lannan v. State,* 600 N.E.2d 1334 (Ind. 1992) as well as in the Indiana Rules of Evidence, reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evid.R. 404(b).

■■ Before admitting evidence of other bad acts or uncharged misconduct, the trial court must determine: (1) whether that evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime; and, if so, (2) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Ind.Evi-

---

**3.** The State asserts that Sundling has failed to preserve any alleged evidentiary errors with respect to the 404(b) evidence because "Sundling never asked that the testimony be stricken from the record or that the jury be admonished to disregard the testimony." Appellee's Brief at 4.

Sundling objected to the testimony of each witness at issue. The trial court overruled each objection and noted a continuing objection in each instance. Sundling's objections were sufficient to preserve the issue for our consideration.

dence Rule 403. *Johnson,* 671 N.E.2d at 1205 (Ind.Ct.App.1996); *Poindexter v. State,* 664 N.E.2d 398, 400 (Ind.Ct.App.1996). If the evidence is offered for the sole purpose to produce the "forbidden inference," that is, that the defendant had engaged in uncharged misconduct and that the charged conduct was in conformity with the uncharged misconduct, then the evidence is inadmissible. *Id.* Further, this court has stated that we view Evid.R. 404(b)'s exceptions to the rule excluding evidence of the accused's extraneous bad acts as examples of legitimate purposes for which evidence of such acts may be offered into evidence, and not as an inventory of excuses used to justify the admission of that type of evidence when the true purpose is to prove the accused's bad character. *Sloan v. State,* 654 N.E.2d 797, 803 (Ind.Ct. App.1995).

■ Applying these considerations to the case at hand, the evidence satisfies neither prerequisite to admission. The trial court determined in a preliminary hearing that Sundling's uncharged molestations were admissible for the sole purpose of showing that A.W. and B.W. were not fantasizing about the incidents of molestations. On appeal, the State claims, without citing any authority, that the trial court did not err in admitting the evidence of other bad acts because Sundling's counsel, during voir dire, "repeatedly asked jurors questions which indicated that the victims had been influenced by adults to imagine their molestation." Appellee's Brief at 5. In effect, the State seems to claim that Sundling's counsel opened the door to 404(b) evidence during voir dire.

However, an examination of the record reveals that Sundling did not place the contention that the victims were fantasizing about their molestations in issue. None of the questions posed to the jury used the word "fantasy" or suggested that either A.W. or B.W. "fantasized" the alleged molestations. Sundling's voir dire of potential jurors merely pointed out that the testimony of young children could be manipulated by parents, police and therapists. Importantly, Sundling never presented any specific factual claim at trial that A.W. or B.W. "fantasized" their sexual encounters so as to allow the prosecution to rebut with evidence of prior misconduct. Whether the children fantasized their molestation was simply not put in issue; and consequently, it may not serve as an excuse for the admission of Sundling's extraneous bad acts or uncharged crimes. *See Sloan,* 654 N.E.2d at 802 (where neither motive nor intent were ever at issue, neither may serve as an excuse for the admission of his extraneous bad acts).

■ Moreover, the testimony of Sundling's uncharged molestations does not provide proof of any of the enumerated uses under Evid.R. 404(b). The exceptions in Evid.R. 404(b) are only available when a defendant goes beyond merely denying the charged crimes and affirmatively presents a specific claim contrary to the charge. The State may then respond by offering evidence of prior crimes, wrongs, or acts to the extent relevant to prove some issue of genuine dispute other than character of a defendant in order to show action in conformity therewith. *Bolin v. State,* 634 N.E.2d 546, 550 (Ind.Ct. App.1994) (citing *Wickizer v. State,* 626 N.E.2d 795 (Ind.1993)). Quite simply, Sundling's defense was that the molestations never occurred. The exceptions listed in Evid.R. 404(b)—motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident—were not in genuine dispute in this case. On appeal, the State does not contend that any of these issues were in genuine dispute and does not claim that the uncharged molestations are admissible under any of these exceptions.

In *Sloan,* we stated that to introduce evidence of extraneous bad acts, the proponent of the evidence must articulate a rational and legitimate connection between the evidence and some matter actually at issue in the case. 654 N.E.2d at 803. Where the proponent is unable to demonstrate such a connection, it is likely that none exists and the true purpose of the evidence was the forbidden one of proving the accused's bad character. *Id.* at 803–804. The State has failed to articulate a rational and legitimate connection between the other bad acts and some matter actually at issue in the case. The admission of Sundling's other bad acts was an abuse of discretion.

Having found error in the admission of Sundling's other bad acts, we now must undertake an analysis of the prejudicial impact of such evidence. *Johnson,* 671 N.E.2d at 1207.[4] The erroneous admission or exclusion of evidence is deemed harmless unless such error affected the substantial rights of the parties. *Id., See* Ind.Trial Rule 61. In determining whether reversal is mandated, the reviewing court must assess the probable impact of the improper evidence upon the jury. *Id.* The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction. *Id.* However, reversal is warranted if the record as a whole reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict. *Id.*

Here, a review of the entire record reveals that the erroneous admission of evidence was likely to have had a prejudicial impact so as to have contributed to the guilty verdicts. The only evidence of each instance of child molestation came from the victims, A.W. and B.W., individually. There was no corroborating testimony by any of the other children present in the motel rooms at the time when the molestations allegedly occurred, and the State, on appeal, concedes that "[A.W.'s] own testimony was confused." Appellee's Brief at 6. Next, the evidence of the uncharged crimes was more abundant than that for the charged crimes against A.W. and B.W. The jury was presented with evidence that Sundling had molested three other children. This evidence undoubtedly focused the jury's attention on Sundling's character and propensity to commit such crimes rather than the conduct and supporting evidence about the crimes charged. Although the trial court instructed the jury as to the limited purpose for which the evidence could be considered, we cannot say that the impact that the improperly admitted testimony likely had on the mind of the average juror was significantly lessened. A substantial likelihood exists that the forbidden inference contributed to the verdict and thereby had an impact upon Sundling's substantial rights.[5] Therefore, we must reverse Counts I and II and remand for a new trial.

We therefore reverse and remand for a new trial with respect to Counts I and II. Count III is reversed and dismissed with prejudice.

Judgment reversed.

STATON, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent with regard to whether the trial court erred in admitting evidence of other crimes, wrongs, and acts. The testimony in question was offered by the State to rebut the Defendant's assertion during voir dire that the victims had been coached and manipulated. The record indicates that all jurors retained for trial heard defense counsel at least once, and some more than once, state that children in child molest cases can be manipulated and coached by parents, police, and therapists. R. 364, 396, 404, and 409. In total, defense counsel stated such four times during voir dire.

It is axiomatic that voir dire is not to be used to begin trying the case before any evidence is taken. *Robinson v. State,* 260 Ind. 517, 297 N.E.2d 409 (1973); *Hopkins v. State,* 429 N.E.2d 631 (Ind.1981). Our supreme court has held that "it is not the

---

4. We note that the State's sole contention is that Sundling's prior uncharged misconduct was properly admitted. Thus, the State does not address this issue.

5. In recognizing the potential prejudice in this type of evidence, the supreme court has noted:

Admission of prior uncharged misconduct [implies] that the defendant is of bad character and poses the danger that the jury will convict solely upon this [implication]. Similarly, authoritative commentators have noted that the admission of uncharged misconduct may weigh heavily against a defendant, even becoming a dispositive factor in conviction. *Wickizer,* 626 N.E.2d at 797; *See also* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 1:02 AT 4 (1984–1991) (noting that uncharged misconduct evidence could weigh so heavily against a defendant as to become a dispositive factor in conviction).

function of voir dire examination to *'inform'* the jurors of anything." *Blackburn v. State,* 271 Ind. 139, 390 N.E.2d 653, 656 (1979). Albeit, there is nothing wrong with using voir dire to inquire into jurors' biases or tendencies to believe or disbelieve certain things about the nature of the crime or about a particular line of defense. *Hopkins,* 429 N.E.2d at 635. However, Sundling did not present the defense of manipulation during his case in chief and nor were his statements to the jurors regarding the impressionability of child victims valid attempt to understand the potential jurors' understanding. Rather, Sundling's attorney was attempting in voir dire to convey the impression that the children who would testify were mistaken due to extraneous influences. Sundling's attorney made a direct attack as to the existence of a *corpus delicti.* It can reasonably be inferred that Sundling's attorney was attempting to cultivate and condition the jurors, both consciously and subconsciously, as to the substantive issues at hand through the use of voir dire examination. This practice has long since been abandoned by the courts of Indiana. *See, e.g., Robinson,* 260 Ind. 517, 297 N.E.2d 409.

Instead of summarily dismissing the State's tactic as error, the Majority opinion should examine what to do when a jury has been tainted by improper conduct in voir dire. When the State is the party that erroneously presents improper argumentation in voir dire, the defendant's remedy is to ask for a mistrial after the State's case in chief if the evidence presented by the State attempts to conform to the improper suggestions made by the State during voir dire. *Robinson,* 297 N.E.2d at 412. However, no Indiana cases could be found which examine what the State's remedy is when a defendant presents improper statements in voir dire. Sundling argues that it was improper and prejudicial for the State to have introduced evidence in its case in chief to rebut the position made by Sundling during voir dire, especially when Sundling did not present direct evidence in support of the voir dire statements during his case in chief. The issue, then, is whether a defendant's improper statements during voir dire can open the door to the State to present evidence in its case in chief which would otherwise be considered rebuttal evidence.

In general, "a trial court abuses its discretion when it admits evidence of extrinsic acts that are relevant to no issue other than character and to proof of behavior in conformity with that character." *Johnson v. State,* 655 N.E.2d 502, 505 (Ind.1995). Only where the error had substantial influence or if one is left in grave doubt, the conviction cannot stand. *Warner v. State,* 579 N.E.2d 1307, 1311 (Ind.1991).

Our supreme court adopted the Federal Rule of Evidence 404(b) in *Lannan v. State,* 600 N.E.2d 1334 (Ind.1992). In adopting Rule 404(b), the court in Lannan abrogated the previously authorized depraved sexual instinct exception which allowed the admission of character evidence in the prosecution of certain sex offenses. Rather than admitting evidence of prior bad acts to establish that a sex crime defendant acted in conformity with a previously exhibited depraved sexual instinct, such evidence can now be admitted only when it is offered for a purpose other than to prove that the defendant acted in conformity with some character trait. *Lannan,* 600 N.E.2d at 1339. The evidence becomes admissible not because it ceases to show the defendant's bad character or criminal propensity, but because it makes the existence of an element of the crime charged more probable than it would be without such evidence, despite its tendency to show bad character or criminal propensity. *Id.*

We examined the impact of defendant opening the door in terms of Ind.Evidence Rule 404(b) in *Koo v. State,* 640 N.E.2d 95 (Ind.Ct.App.1994) *trans. denied.* Relying upon *U.S. v. McAnderson,* 914 F.2d 934 (7th Cir.1990), and *U.S. v. Beltempo,* 675 F.2d 472 (2nd Cir.1982), cert. denied 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353, we determined that prior misconduct may be admitted to rebut a specific factual claim raised by the defense. In *Koo,* because Defendant introduced substantial evidence to suggest that the victim had hallucinated the sexual encounter, we found that the prosecution was entitled to rebut that claim with evidence of the Defendant's prior misconduct.

Ind.Evidence Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Further, the exceptions listed in Evid.R. 404(b) are available only when a defendant goes beyond merely denying the charged crime and affirmatively presents a claim contrary to the charge. *Bolin v. State*, 634 N.E.2d 546, 550 (Ind.Ct.App.1994). The State may then respond by offering evidence of prior crimes, wrongs or acts to the extent relevant to prove an issue of genuine dispute. *Id.*

We have adopted a four-part test to evaluate the admissibility of evidence under Rule 404(b); this test requires that the evidence:

> (1) be directed toward proving a matter in issue other than the defendant's propensity to commit the crime charged, (2) show that the prior act is similar enough and close enough in time to be relevant to the matter in issue, (3) be such that a reasonable jury could find that the act occurred and that the defendant committed the act, and (4) meet the requirement of Rule 403 that the evidence's probative value not be substantially outweighed by the danger of unfair prejudice.

*Fisher v. State*, 641 N.E.2d 105, 108 (Ind.Ct. App.1994) (quoting *United States v. Schweihs*, 971 F.2d 1302, 1311 (7th Cir. 1992)).

In other words, the evidence may be admitted for the purpose of rebutting, or countering, a defendant's factual assertions, to the extent that the evidence admitted is relevant to those factual assertions. *Fisher v. State*, 641 N.E.2d 105. To be considered relevant in Indiana, evidence must logically tend to prove or disprove a material issue of fact. *Bolin*, 634 N.E.2d at 548. Evidence which tends to prove a material fact is admissible, even if the tendency to provide such proof is slight. *Id.*

To the extent the evidence introduced by the State was admissible, and I believe that it was, we must examine whether its probative value is outweighed by its prejudicial impact, in accordance with Ind.Evidence Rule 403. *Jeramy Heavrin v. State*, 675 N.E.2d 1075 (Ind.1996); *Taylor v. State*, 659 N.E.2d 535, 543 (Ind.1995). The decision to admit evidence is within the sound discretion of the trial court and is afforded a great deal of deference on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind.1995).

Additionally, though the evidence in question was admitted in the State's case in chief, because it was used to rebut statements made by the defense in voir dire, it can be characterized as rebuttal evidence. The scope of rebuttal evidence is within the trial court's discretion. *Heck v. State*, 552 N.E.2d 446, 453 (Ind.1990). Evidence which explains, contradicts, or disproves the adversary's evidence may be competent rebuttal evidence. *Id.*

We were faced with a similar issue in *Koo*, 640 N.E.2d 95, wherein the defendant was a doctor accused of raping his patient. At trial, the defendant presented evidence that the victim was a heavy user of drugs such as Valium, and implied the drugs caused her to hallucinate the rape. The State then presented the testimony of two other patients who described encounters with the defendant which were remarkably similar to that described by the victim. On appeal, the defendant claimed the trial court erred in admitting the testimony of the other patients in part because it did not fall within an articulated exception to the general rule disallowing such evidence. We held that the evidence was admissible for the purpose of refuting defendant's claim that the victim was mistaken due to her drug usage.

Likewise, though presented in voir dire, Sundling's defense of mistake impressed upon the jury that the child witnesses were somehow not credible. It would be unfair to the State to require that it wait until the defense has yet a second chance in its case in chief to present additional matter on the same issue raised in voir dire. The same is true if the defense postures itself accordingly

in its opening statement. Sundling was not examining the jurors as to their understanding as to an element of the crime such as the element of intent. Had such been the case, Sundling's argument may carry more credence. Rather, Sundling placed a defense of mistake on the block for all jurors to examine, test, and arguably apply to the facts thereafter presented. Such conduct during voir dire should be discouraged. The remedy of allowing the State to rebut such posturing in its case in chief is a less costly remedy than striking the entire panel and empaneling a whole new jury. Additionally, it would serve as a deterrent to improper conduct in voir dire.