Willard **THOMAS**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 10A04–9205–CR–151.

Court of Appeals of Indiana, Fourth District.

April 26, 1993.

Transfer Denied June 16, 1993.

Vicki L. Carmichael, Chief Public Defender, Jeffersonville, for appellant.

Pamela Carter, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

On December 20, 1991, a jury convicted Willard R. Thomas, age 42, of three counts of Child Molesting, a class D felony. Thomas was sentenced to three years on each count with the sentences to be served consecutively to each other and to any sentence that might be imposed by the State of Texas because Thomas violated terms of probation he was serving from a previous Texas conviction for Indecency with a Child. The victims in Indiana were his three teenage daughters, ages 17, 15, and 14. The victim in Texas was his oldest daughter, who was 16 at the time of the offense and 19 at the time of Thomas's Indiana trial.

Thomas claims the trial court erroneously admitted: (1) an agreed entry disposing of a CHINS petition regarding his three daughters; (2) evidence of his prior sexual misconduct; and (3) that the evidence is insufficient to support his convictions.

We affirm.

### FACTS [1]

The Thomas family moved to Jeffersonville from Texas in 1990. The move was caused by Thomas's pleading no contest to a charge of Indecency with a Minor Child, his oldest daughter. After arriving in Indiana, Thomas turned his attention to his three remaining daughters. He would frequently grab their breasts and buttocks over their clothes. These events would occur when the girls were alone with Thomas and sometimes when another daughter was present. The youngest daughter, 14, stated that Thomas would grab her breasts and buttocks and frequently talk about how long "his body part was."

The 15 year old testified Thomas would rub her breasts, vaginal area and buttocks. Thomas would laugh while doing this, as if he found the touching and the girl's reactions amusing. She was always clothed when this happened. If she told him to stop, some times he would and sometimes he would not. He also would comment about how large her breasts were, but did not make comments about himself.

The 17 year old described his actions as touching both her chest and "behind" over her clothing. She also stated that she had heard Thomas's frequent comments about her sister's large breasts. Shortly before the authorities discovered the molestations, Thomas accused the 17 year old of want-

---

1. We call Thomas's counsel's attention to Ind.Appellate Rule 8.3(A)(5). A witness by witness semi-verbatim transcript (including defense counsel's excuses for twice being late for court) of the entire trial is not "[a] statement of the facts relevant to the issues presented for review...."

ing—in graphic terms—to have sex with him.

The girls never reported the molestations to their mother, their 18 year old brother, or to any family friend. A neighbor, a foster parent, apparently found out about the molestations from her foster daughter and reported them to the authorities. The girls were removed from the family home and placed in the Youth Shelter. Eventually, all were placed in foster homes.

The girls were found to be Children in Need of Services. Both parents, with advice of counsel, signed an Agreed Entry Stipulating Children in Need of Services, Waiver of Initial Hearing, Waiver of Fact Finding Hearing, Waiver of Pre–Dispositional Report and Stipulated Dispositional Decree from the Clark Superior Court No. 2. The CHINS Agreed Entry stated, among other things, that the girls were victims of a sex offense and that Thomas agreed to participate in an incest program. At trial, this document was admitted into evidence over Thomas's objection.

All three girls testified at trial. The oldest daughter had not been in contact with the family since they left Texas. The Texas judgment of conviction and probation order was also entered into evidence.

## DECISION

### I. ADMISSION OF THE AGREED ENTRY

Thomas claims the trial court erred by allowing the Agreed Entry to be admitted because it was an involuntary confession. He argues that: (1) he was never warned that it could be used against him in a criminal proceeding; (2) he never was given Miranda warnings; and (3) he did not know what the document contained. Thomas cites *Hastings v. State* (1990), Ind.App., 560 N.E.2d 664, *trans. denied* (1991), in support of his position. His reliance on *Hastings* is misplaced.

In *Hastings,* the defendant's two year old son was injured by her boyfriend—in 1987 he broke the child's legs and a year later, broke the child's arm. A CHINS action was begun following the first inci-

dent and Hastings was charged with neglect. She pleaded guilty and her son was placed in foster care. In order for Hastings to regain custody, she was required by court order and under statutory law to meet with and cooperate with a welfare worker. During one of these meetings, the caseworker asked her if she suspected her boyfriend of breaking the child's legs in 1987. Hastings said she was suspicious, but didn't want to believe it. This discussion occurred before the 1988 injury. Hastings was not represented by counsel at this time.

Hastings was then charged with neglect for the 1988 broken arm and was convicted. When the caseworker testified at trial, Hastings' statement to her was admitted over objection that the statement violated Hastings' right against self-incrimination and was an involuntary confession because she was under compulsion when she made it. In finding that the statement should not have been admitted, we set forth a two part test: (1) was the caseworker acting as an agency of the government in the course of securing a conviction; and (2) was her statement given involuntarily? *Hastings, supra,* at 668.

The document signed by Thomas specifically indicates he was aware of its contents and that he voluntarily entered into the agreement. The document states, in part, the following:

The parties now advise the Court that they agree and stipulate as follows:

\* \* \* \* \* \*

6. That all parties herein have been advised that they cannot be compelled or required to enter into any agreement with the Clark County Department of Public Welfare against their will.

7. That all parties herein are entering into this stipulation and agreement of their own free will without any threats, promises or coercion by any outside pressures.

8. That the parties stipulate that the children ... are children in need of services as defined by the Indiana Ju-

venile Code, in that said children are a victim of a sex offense.

R. 554–555, 560. This document was signed by Thomas, his wife, and their attorney on August 25, 1991.

■ Under our test set forth in *Hastings,* it is clear that the Clark County Department of Welfare is a government agency. A factual question remains—was the Department attempting to secure a conviction? However, we need not address this question because Thomas clearly fails the second part of the *Hastings* test. Unlike the defendant in *Hastings,* Thomas was represented by counsel. The CHINS Agreed Entry is clear and unambiguous— Thomas voluntarily signed the agreement with the advice of counsel. In the absence of evidence to the contrary, we presume that counsel was competent and properly advised Thomas. *See, e.g. Slaton v. State* (1987), Ind., 510 N.E.2d 1343. Therefore, we conclude Thomas knowingly signed the agreed entry. In response, Thomas argues that he only signed the agreement pursuant to the poor advice of his counsel. As noted by the prosecutor, that is between Thomas and his counsel. Thomas can bring a malpractice action if he so wishes. As to the Agreed Entry, the document speaks for itself.

In regard to Thomas's claimed Miranda violation, we note that he offers no authority to support this claim—apparently because there is none. Thomas was not in custody at the time he signed the CHINS document, therefore, his constitutional arrest rights had not attached. In addition, he was represented by counsel which, of course, is one of the points of the Miranda warnings. In sum, we find no merit in any of Thomas's arguments. The trial court correctly admitted the CHINS Agreed Entry.

## II. ADMISSION OF EVIDENCE OF DE- PRAVED SEXUAL INSTINCT

■ Thomas argues that evidence of his Texas conviction for Indecency with a Child should not have been admissible because it clearly was used to inflame the passions and prejudice of the jury. Our supreme court, in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, abolished the depraved sexual instinct exception for admission of a prior bad act to show action in conformity with a particular character trait because the probative value of such evidence is outweighed by its prejudicial impact. *Id.* at 1339. However, the court stated that the *Lannan* rule is not a *per se* rule. *Id.* Such evidence can be admitted for other purposes, e.g., "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *Id.* Thus, "such evidence may be admissible *despite its tendency to show bad character or criminal propensity,* if it makes the existence of an element of the crime charged more probable than it would be without such evidence." *Id. quoting Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872–873 (emphasis added by the *Lannan* court).

In *Pirnat v. State* (1992), Ind., 600 N.E.2d 1342, the court made it clear that the rule of *Lannan* applied to cases currently on appeal so long as the evidentiary error had been preserved at trial. The State asked the court to reconsider its retroactive application of *Lannan.* The supreme court denied this request in *Pirnat v. State* (1993), Ind., 607 N.E.2d 973 (Opinion on Reh'g), and said:

> Pirnat and others whose cases properly preserved the issue and whose cases were pending on direct appeal at the time *Lannan* was decided receive the benefit of review under the new rule for the basic reason that they ought not to be penalized merely because we chose another pending case as the vehicle for announcing the change of an evidentiary rule.

*Id.* at 974. Thomas properly objected to the admission of this evidence at trial, thus, the *Lannan* rule is applicable to his case.

The State argues that this evidence should be admissible as evidence of Thomas's intent. Evidence of prior bad acts is admissible to prove intent if the question of intent is at issue. *United States v. Gruttadauro* (1987), 7th Cir., 818 F.2d 1323, 1327. In Indiana, child molesting is a specific intent crime. Ind.Code 35–42–4–3.

However, the specific intent required to convict a defendant may be inferred from the circumstances. *Dougherty v. State* (1983), Ind.App., 451 N.E.2d 382, 387. Character evidence used to show intent must always survive a Fed.R.Evid. 403 balancing analysis. *United States v. Shackleford* (1984), 7th Cir., 738 F.2d 776, 781. In *Hardin v. State* (1993), Ind., 611 N.E.2d 123, our supreme court adopted Rule 403 in its entirety. 611 N.E.2d 128. The court also stated that these two rules [Rule 403 and Rule 404(b)] must be employed in conjunction with one another. *Id.*

We recently addressed the State's argument in *Pirnat v. State* (1993), Ind.App., 612 N.E.2d 153 (Opinion on Remand):

> Where intent appears to be only a formal element because proof of the proscribed act gives rise to an inference of intent, unless the State has reason to believe that the defendant will raise intent as an issue, evidence of other acts directed toward intent should not be used in the State's case-in-chief and should not be admitted until the defendant raises the issue. We agree with the *Shackleford* court's reasoning that to allow intent automatically to become an issue in the class of cases ... in which intent is inferable from the nature of the act charged, would create an exception to Fed.R.Evid. 404(b) that 'would virtually swallow the rule against the admission of evidence of prior misconduct.'

*Id.* at 156 (citations omitted). Like Pirnat, Thomas had not placed his intent at issue when the State introduced, and the trial court admitted, evidence of his past offense. Therefore, the admission of this evidence was error.

■ However, not all error provides grounds for reversal. If a trial court commits some error, that error might not affect the outcome of the trial. We deem such errors harmless. *See Hardin, supra,* at 131; *Lannan, supra,* at 1341; *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808;

Ind.Trial Rule 61. In determining whether the error warrants reversal, we must assess the probable impact of the evidence on the jury. *Timmons v. State* (1992), Ind., 584 N.E.2d 1108, 1113. Only where the error had substantial influence or if one is left in grave doubt, the conviction cannot stand. *Warner v. State* (1991), Ind., 579 N.E.2d 1307, 1311.

■ Here, the evidence was harmless. All three victims, ages 14, 15, and 17, testified about the molestations. All described identical acts. All three stated that they witnessed Thomas touch the other girls. The CHINS Agreed Entry corroborated the victims' testimony.[2] This other evidence leads us to conclude that the admission of Thomas's prior conviction during the State's case in chief was not of sufficient weight to require reversal.

## III. SUFFICIENCY OF THE EVIDENCE

■ Finally, Thomas claims the evidence was insufficient to prove he committed the crime of Child Molesting. He argues the State failed to prove that he touched his daughters with the "intent to arouse or satisfy ... sexual desires." I.C. 35-42-4-3(d). Our standard of review for sufficiency of the evidence is well known. We neither reweigh evidence nor judge the credibility of witnesses. *Smith v. State* (1989), Ind., 543 N.E.2d 634. We review only evidence most favorable to the verdict together with all reasonable inferences which can be drawn therefrom. *Id.* at 637. If there is substantial evidence of probative value to support the conclusion that the defendant is guilty beyond a reasonable doubt, the verdict will not be set aside. *Johnson v. State* (1987), Ind., 502 N.E.2d 484.

■ It is well settled in Indiana that intent to gratify or arouse sexual desires may properly be inferred from an actor's conduct and the surrounding circum-

---

**2.** In addition, any error in the admission of evidence is rendered harmless by a defendant subsequently eliciting similar evidence. *Thomas v. State* (1981), Ind., 423 N.E.2d 682, 690. Thomas's Indiana probation officer testified for the State. On cross examination, counsel for Thomas brought out the fact that Thomas was on probation from the State of Texas for molesting his oldest daughter. R. 536–537.

stances. *See Nelson v. State* (1988), Ind., 525 N.E.2d 296, 297; *Warrick v. State* (1989), Ind.App., 538 N.E.2d 952, 955. The victims' testimony along with the corroborating evidence is sufficient to support the jury's conclusion that Thomas's actions were taken to arouse or satisfy his sexual desires. Thomas asks us to reweigh the evidence. This we will not do.

Thomas's three convictions for Child Molesting, a class D felony, are affirmed.

CHEZEM and ROBERTSON, JJ., concur.