Valentin ORTIZ, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45S00–9910–CR–514.

Supreme Court of Indiana.

Feb. 1, 2001.

Jeff Schlesinger, Crown Point, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Valentin Ortiz, Jr. was convicted of murder and sentenced to sixty years imprisonment. In this direct appeal, he contends that: (1) the trial court abused its discretion by denying his motion for a mistrial; (2) the trial court abused its discretion by admitting non-relevant, prejudicial testimony about Ortiz's drug use after the murder; (3) the trial court erred in admitting inadmissible hearsay; and (4) the trial court erred in admitting evidence of Ortiz's prior assault on his girlfriend. We agree that there were a number of errors in the admission of evidence, but affirm the judg-

ment of the trial court because we conclude that the errors were harmless in light of the properly admitted evidence.

### Factual and Procedural Background

On November 5, 1997, Ortiz found his girlfriend, Ricarda Figueroa, smoking crack in a room with the infant he believed to be his son. A fight ensued, and Ortiz stabbed Figueroa and took the baby. Ortiz then went to the home of seventy-five-year-old Cruz Dominguez and asked Dominguez to drive him and the baby to Ortiz's sister's house. When they arrived in the alley behind the sister's home, Dominguez drew a gun and demanded that Ortiz leave the baby with him. As Ortiz started to exit the truck, Dominguez first grabbed a baby blanket that was around the child and then hit Ortiz in the head with "The Club," an anti-theft device for automobiles. Ortiz pulled out a pocket knife, stabbed Dominguez repeatedly, and drove away in the truck leaving Dominguez's body in the alley.

Ortiz then picked up his friend, Benjamin Maldonado, dropped off the baby with friends, attempted to sell some parts of the truck, and fled the state. Police searching for Ortiz in connection with his assault on Figueroa discovered Dominguez's body that evening in the alley. Police found a loaded handgun in Dominguez's pocket and also found portions of "The Club" and a broken broom at the scene. Blood samples taken from "The Club" and the broom matched both Ortiz and Dominguez. Dominguez had stab wounds on his chest, neck, hands, and forearms.

Ortiz returned to Indiana several weeks later and was arrested on December 15. At his jury trial, Ortiz testified to the events surrounding the stabbing and submitted instructions on voluntary manslaughter, reckless homicide, and self-defense, all of which were given to the jury. The jury found him guilty of murder and felony murder, and he was sentenced on the murder count to sixty years imprisonment.

### I. Mistrial

Ortiz first contends that the trial court abused its discretion in refusing his motion for a mistrial. Before the trial began, the trial court granted Ortiz's motion in limine to exclude any evidence relating to his attack on Figueroa on the night of the murder. During the State's questioning of a police officer at trial, the officer stated that, "[Figueroa] told me she was attacked by Valentin Ortiz." Ortiz promptly moved for a mistrial, which the court denied. The court admonished the jury that: "There was an objection to the last question and answer. I've granted that; the question and answer [are] ordered to be stricken from the record pursuant to the preliminary instructions that we gave to the jury." Preliminary Instruction No. 11 read:

> During the progress of the trial, certain questions may be asked and certain exhibits may be offered which the Court may rule are not admissible into evidence. You must not concern yourselves with the reasons for the rulings since the production of evidence is strictly controlled by the rules of law.

> You must not consider an exhibit or testimony which the Court orders stricken from the record. In fact, such matter is to be treated as though you had never heard it.

> Nothing I say during the trial is intended as any suggestion of what facts or what verdict you should find. Each of you, as jurors, must determine the facts and the verdict.

Ortiz now contends that this was insufficient to cure the prejudice, which, he argues, affected the entire course of the trial.

Citing *Bradley v. State*, 649 N.E.2d 100, 107–08 (Ind.1995), the State contends that this admonishment, which required the jury to refer to the preliminary instruction on disregarding excluded evidence, cured any prejudice Ortiz may have faced. The decision to grant or deny a motion for a mistrial lies within the discretion of the trial court. *Heavrin v.*

*State,* 675 N.E.2d 1075, 1083 (Ind.1996). A mistrial is an extreme remedy granted only when no other method can rectify the situation. *Id.* On appeal, in order to succeed on a claim based on the denial of a mistrial, the defendant must demonstrate that the conduct complained of was so prejudicial that it had a probable persuasive effect on the jury's decision. *James v. State,* 613 N.E.2d 15, 22 (Ind.1993); *Kelley v. State,* 555 N.E.2d 140, 141 (Ind.1990).

Whether or not this admonition cured the problem, the entire incident was discussed later in the trial when a witness testified that there was "a commotion" involving Figueroa and Ortiz, Ortiz emerged after the argument with a knife, and Figueroa was cut and bleeding. This testimony as to the attack on Figueroa was in response to defense counsel's questions concerning whether there was a struggle when Ortiz took the baby from the house.[1] It did not occur because of the officer's earlier allusion to the incident.[2] As a result, Ortiz was not prejudiced by the officer's earlier reference to the attack on Figueroa.

## II. Testimony Concerning Ortiz's Drug Use

■ Ortiz next claims that the trial court abused its discretion when it admitted testimony from Maldonado about the events on the evening of the murder.[3] This testimony could be understood to assert that Ortiz had used heroin after the murders. Maldonado's testimony was that "we" had used drugs, in a context where it is not at all clear that the term included

Ortiz. Maldonado later referred to Ortiz as "under the influence," but it is not clear whether this was alcohol or something else. Ortiz claims that this evidence was not relevant and that even if it were relevant, it failed the Indiana Evidence Rule 403 balancing test. The State responds that Maldonado testified to heroin use by both himself and Ortiz, and therefore the testimony was relevant to attack Maldonado's credibility and to show Maldonado's bias in favor of Ortiz. The trial court appeared to agree that evidence of Ortiz's drug use was improper. However, Ortiz made no request for any corrective order with respect to the initial testimony that "we" had used drugs. Also, Ortiz did not object on relevance grounds to the second statement concerning his apparent intoxication. Therefore, this argument is waived. *Cutter v. State,* 725 N.E.2d 401, 406 (Ind.2000) ("Failure to object to the admission of evidence at trial normally results in waiver....").

■ However, even if this issue were preserved, "[e]rrors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *Barber v. State,* 715 N.E.2d 848, 852 (Ind.1999) (quoting *Fleener v. State,* 656 N.E.2d 1140, 1141 (Ind.1995)); *accord* Ind.Trial Rule 61. In this case, there is powerful evidence that Ortiz killed Dominguez with the required mens rea and not in self-defense. This includes both Ortiz's testimony that he stabbed Dominguez and also evidence of the nature of Dominguez's injuries.

> Q: You distinguish cutting from stabbing?
> A: To me stabbing is this way penetrating something. No, I just cut her. That's all I did.

However, because we conclude that this testimony was erroneously admitted, *see* Part IV, we do not base our analysis on it. The other witness' testimony is sufficient for this purpose.

---

1. Apparently not realizing the irony of her question or the potential response, defense counsel asked, "There was no struggle over the baby when he took the baby; is that correct?" The witness responded, "No. There was no struggle because she was bleeding so that we got a towel for her arm." This answer led to the discussion of Ortiz's attack on Figueroa.

2. The attack was also discussed in greater detail during Ortiz's own testimony.
 > Q: And, in fact, you stabbed Ricarda, didn't you?
 > A: I cut her. I never stabbed her.

3. Ortiz makes no argument of error concerning his own testimony of his drug use on the night of the murder.

There was a four-inch-deep wound in Dominguez's chest, Dominguez's throat had been slit, and there were numerous defensive wounds on Dominguez. Also, DNA evidence placed Ortiz at the murder scene and there was testimony that Ortiz had Dominguez's truck, had attempted to sell its parts, and that he then fled the state. *Cf. Alford v. State*, 699 N.E.2d 247, 251–52 (Ind.1998) (error in admission of statement was harmless where physical evidence of thirteen gunshot wounds was sufficient to prove mental status and disprove self-defense). In light of this evidence, we cannot conclude that the admission of Ortiz's drug use after the murder affected his substantial rights. It is not grounds for reversal.

### III. Hearsay

■ Ortiz next contends that the trial court admitted inadmissible hearsay. At trial, a police officer repeated Figueroa's account of her encounter with Ortiz. Specifically,

Q [State]: And did Ricarda Figueroa tell you there had been an argument with the defendant Valentin Ortiz?

A [Police Officer]: Yes.

Q: And did she tell you whether or not when he left whether or not he had anything with him?

A: Yes.

Q: And did she tell you that he had a baby with him?

A: Yes, he had taken her child.

Q: And did she also tell you that he had a knife in his possession?

A: Yes.

Q: And did she tell you about what time that argument had occurred in relation to your responding to 425 Pierce at 6:30 p.m.?

There was no objection to these leading questions, but at this point, defense counsel objected to the testimony as hearsay. The trial court allowed the testimony to show why the police acted in the manner in which they did.

■ Hearsay is an out of court statement offered to prove the truth of the matter asserted. Ind.Evidence Rule 801(c). It is inadmissible unless it falls under an exception to the hearsay rule. Ind.Evidence Rule 802. A statement is not hearsay if offered for another purpose. *Anderson v. State*, 718 N.E.2d 1101, 1102–03 (Ind.1999); 13 Robert Lowell Miller, Jr., *Indiana Practice* § 801.302 (2d ed.1995).

■ In this case, the State claims that the testimony was admissible to explain "why the police began searching for Defendant, description of Defendant, and why caution was used." If offered for this purpose, it is not offered for the truth of the statements made by Figueroa, but rather to prove that Figueroa said these things, as to which the officer was an eyeball witness. This cures the hearsay problem, but the issue of the relevance of this testimony remains. *Smith v. State*, 721 N.E.2d 213, 218 (Ind.1999) ("In addition to the requirement that hearsay fall within an exception to be admissible, the Rules of Evidence also mandate that only relevant evidence is admissible."). The State does not explain how the steps of the police investigation make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind.Evidence Rule 401; *cf. Bonner v. State*, 650 N.E.2d 1139, 1141 (Ind. 1995) ("Neither the content of the informants' statements nor the propriety of the police initiating an investigation was seriously questioned at trial. Because the out-of-court statements lacked relevance to any contested issue other than the matters asserted therein, they must be viewed either as irrelevant or as hearsay and their admission was improper."). Moreover, even if the evidence were relevant, it would not pass the Rule 403 balancing test because its minimal probative value is outweighed by the prejudice to Ortiz from having the jury hear about his other

crimes. Because the evidence is not relevant insofar as it is not hearsay, the trial court erred in admitting it. However, it is harmless for the same reasons described in Part II, above.

## IV. Prior Bad Acts

 Ortiz finally contends that the trial court erred in admitting evidence of his past attacks on Figueroa. At trial, in response to a question on direct examination concerning the people whom he had told the crime was in self-defense, Ortiz testified that, "I wanted [a friend] to know because people were going around portraying me as some—like I am a murderer. I am a killer, you know, what I am saying, and I am not the person that they are talking about." The State was then allowed to cross-examine Ortiz concerning a prior attack on Figueroa that resulted in a guilty plea to criminal recklessness. The State claimed, and the trial court agreed, that this was admissible because Ortiz had "opened the door" to character evidence under Indiana Evidence Rule 404.

 Evidence Rule 404 provides:
(a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

. . . .

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as . . . intent. . . .

The State first claims that evidence of Ortiz's criminal recklessness conviction is relevant because Ortiz opened the door by stating that he was not a killer. However, his statement is not evidence of a pertinent character trait that a prior conviction for criminal recklessness would rebut. One can be convicted of criminal recklessness and still not be a killer. This is not a case where the defendant says, "I would never beat my wife," and has been convicted of several prior domestic batteries. Evidence of a prior criminal recklessness charge against someone other than the victim does not rebut a statement that the defendant is not a killer. Further, "the evidence relied upon to 'open the door' must leave the trier of fact with a false or misleading impression of the facts related." *Gilliam v. State,* 270 Ind. 71, 77, 383 N.E.2d 297, 301 (1978). Ortiz's one statement about not being a murderer does not create a false impression that he was an upstanding citizen. The trial court thus erred in admitting the evidence under this rationale.

 The State also argues that the evidence of Ortiz's criminal recklessness against Figueroa was admissible to show his intent to kill Dominguez.

In assessing admissibility of 404(b) evidence the court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

*Ortiz v. State,* 716 N.E.2d 345, 350 (Ind. 1999). These incidents involved two different victims. Ortiz's attack of Figueroa did not make it more or less likely that Ortiz knowingly or intentionally killed Dominguez. Thus, the evidence, if relevant at all, shows a propensity for violence, which is precisely what is prohibited by the Rules of Evidence. Accordingly, the evidence of Ortiz's prior criminal recklessness conviction is not admissible under this rationale either. Once again, admitting this evidence was harmless error for the same reasons discussed in Part II, above.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs except as to Part IV with which he concurs in result.