David B. CRAUN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0012–CR–810.

Court of Appeals of Indiana.

Feb. 6, 2002.

Patrick Murphy, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary[1]

Appellant-defendant David B. Craun ("Craun") appeals his convictions for two counts of child molesting,[2] both as Class C felonies. We reverse and remand for a new trial.

### Issue

Craun presents two issues for review, one of which is dispositive:[3] whether the trial court erred in admitting evidence of prior bad acts under Indiana Evidence Rule 404(b).

### Facts and Procedural History[4]

The facts most favorable to the convictions indicate that Craun lived with his wife Nancy Craun ("Nancy") and her two daughters: H.D., born on August 21, 1990, and her older sister, D.D.[5] On June 25, 1999, Craun was home with H.D. and his two sons from a previous marriage. That evening, Craun asked H.D. to come to his room, and she complied. As H.D. lay on the bed next to Craun, he placed his hand down her pants and rubbed her vagina. Craun also rubbed H.D.'s chest under her clothes. On July 28, 1999, H.D. slept on the floor of Craun and Nancy's bedroom on her mother's side of the bed. While Nancy was in the shower, Craun moved H.D. onto the bed and rubbed her bottom under her clothes.

On August 2, 1999, H.D. told Nancy that Craun had touched her inappropriately. Nancy confronted Craun, and he initially denied the allegations. Subsequently, H.D., Nancy, and neighbor LaVonna Swindle ("Swindle") confronted Craun about H.D.'s accusation, as well as accusations made by D.D. and Swindle's daughter, E.W.[6] Nancy had told Craun not to make H.D. out to be a liar. H.D. told Craun, "You know you did it, and you can't deny it." Craun flatly denied molesting E.W.[7] but apologized to H.D. and indicated that he never meant to hurt her.

1. We heard oral argument in this case on October 1, 2001, in Indianapolis.

2. *See* IND.CODE § 35–42–4–3 ("A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.").

3. We therefore need not address Craun's argument that the trial court erred in admitting testimony that neighbor LaVonna Swindle had asked Craun whether he had been molested as a child.

4. We remind Craun's counsel that the summary of facts required by Indiana Appellate Rule 8.3(A)(5), now Rule 46(A)(6), should be a concise narrative summary of the facts in a light most favorable to the judgment. *See Moore v. State*, 426 N.E.2d 86, 90 (Ind.Ct.App. 1981). It should not summarize the testimony of each witness and should be informative, not persuasive. *Id.*

5. The record indicates that D.D. was eleven years old at the time of trial in September 2000.

6. The record indicates that E.W. was twelve years old at the time of trial.

7. The record is inconclusive regarding the substance of D.D.'s allegations against Craun and his response to them. According to Craun, D.D. was upset with him for making her "get out of the water at Kentucky Kingdom." D.D. testified that she "said that [she] felt uncomfortable and that [she] didn't like [Craun] touching [her] inappropriately"; D.D. also testified, however, that she could not remember Craun's response to her accusation.

On August 6, 1999, the State charged Craun with six counts of child molestation involving H.D., D.D., and E.W. The trial court later severed the charges. On September 19, 2000, Craun filed a motion in limine seeking to exclude, *inter alia*, any "bad act" testimony from E.W. and D.D. regarding their molestation allegations or any "alleged misconduct" regarding Craun "and an ongoing nature of touching [E.W.], [H.D.], or [D.D.]" In an accompanying memorandum, Craun stated that since neither he nor his counsel had "indicated that any 'claim of particular contrary intent' " would be presented during trial, the State should "be prohibited from admitting said evidence." At a pretrial conference, the court granted Craun's motion with the limited exception of allowing the State to establish the duration of Craun's ongoing touching of H.D.

On cross-examination, Craun's counsel asked H.D., "Was there ever .... in the times that you described to the jury on the 25th of June and on the 28th of June [*sic*] was [Craun] tickling you when you were touched?" H.D. answered, "No." On direct examination, Craun testified that he had apologized to H.D. because he and Nancy were "in a hurry" to go to football practice and cheerleading practice, respectively; because Nancy had "already told [him] not to make [H.D.] out to be a liar"; and because he "didn't feel that it was appropriate at that time to try to continue that conversation." The following exchange occurred regarding the events of June 25, 1999:

Q. Okay. Was [H.D.] on the bed with you?

A. Yes, she was.

Q. And at that time, was there any inappropriate touching?

A. No.

Q. Did you rub her as she testified?

A. No, I did not.

Q. And was there anything that you believed happened that day that would give somebody the impression that there was inappropriate touching?

[PROSECUTOR]: Your Honor, I am going to object. It calls for speculation on the part of witnesses as to what other people would believe.

THE COURT: Overruled, you can proceed. Answer the question.

. . . .

A. I tickled [H.D.]

Q. Do you know as you sit there toddy [*sic*] whether you ticked [*sic*] her that night or not?

A. Yes, I do.

Q. Okay. And where?

A. On the upper part of her thigh.

At the close of direct examination, the State initiated the following sidebar:

I think that [Craun] has raised the defense of accident. He is saying that this tickling is what upset [H.D.] that night and I think he's claiming it's. . . . I didn't touch her sexually I touched her on her upper thigh to tickle her and I think that opens the door to some of the other girls. And I want to be able to question him about that.

After a recess and additional argument outside the presence of the jury, the following exchange occurred:

THE COURT: Okay, let's go back to . . . let's hear some discussion about the. . . I mean as I understand it, the defense at this point is that this touching was for the purpose of tickling and was not to satisfy my sexual desires. Do you want to respond to that?

[DEFENSE COUNSEL]: Our defense is that there was no touching. I think she was very specific . . . [H.D.] was not very specific. Mom was specific that the touching happened in a certain way. [Craun's] testimony is that that didn't happen. It just didn't happen.

THE COURT: Well, that's not what I heard. I heard she misunderstood this touching is what I heard. It was tickling and ...

[DEFENSE COUNSEL]: But he never ... he said he tickled her on the upper thigh and that's all he said.

[PROSECUTOR]: And then after that she says, you know, I'm tired. I want to go to bed. The impression is very clearly ... this is the innocent touching that led to this accusation. And throughout the statement that's what it comes back to. And he flat out says, I may have touched her underwear. So ... I mean that's the part that has been left out of the testimony but it's ... that's where it's going is that she ... it's a claim of contrary intent. Yeah, I did physically touch her that night. Maybe not the way that she or [Swindle] or [N]ancy say, but I did physically touch her that night. And this touching was somehow upsetting and that's where she's come up with this.

[DEFENSE COUNSEL]: But he didn't say that. I think what the State wants to do is open t[heir] own door on cross examination saying to go ... to add mo[r]e things to it and then say somehow we opened the door when the State wants to open the door.

THE COURT: Okay, well ...

[DEFENSE COUNSEL]: He did ... he denied that it happened.

THE COURT: Well, he doesn't deny ... the evidence that has been before this court and this jury is not that he denied the touching but that his touching was tickling and it was not a sexual touching. And that she misunderstood the intent in the touching. That's clearly what the ... what his statement is. And so the Court's going to rule that for the purpose of establishing intent, his other touching [of D.D. and E.W.] is admissible for that purpose.

When the State asked whether it could also question Craun regarding his denial of E.W.'s and D.D.'s accusations to establish that his apology to H.D. was made as an admission rather than for the purpose of avoiding a confrontation, the trial court took a brief recess and issued the following ruling:

Okay, the Court is going to permit the State to establish through the defendant or other witnesses that the defendant did not take the same approach to the accusations in the bedroom at that time of the other children. Is that ... as I understand it, that was the venue where this occurred. Right now, the evidence before the jury is that he admitted or acquiesced in the accusation of [H.D.] because he was in a hurry. And it was an inappropriate place and time to deal with it. But in fact, at the same time in the same location with the same people present he did make a direct denial as to another allegation.

. . . .

Since the Court is permitting the evidence of the two other molest allegations in to establish that his motive in the touching was gratifi ... sexual gratification rather than tickling. There's no additional prejudice to the defendant. It's coming out, I mean the same bad act will come out. And the fact that he made a flat denial when he didn't with regard to [H.D.], exposes him to no further ... no additional prejudice. And it is fair area considering the defendant's explanation of his acquiescence or admission.

The trial court acknowledged the "defense position," [8] and the State cross-examined Craun as follows:

---

8. Craun's counsel stated,

I mean [Craun] can either not tell the truth

Q. Okay. And then how about [E.W.,] what did she say [when she confronted Craun with her accusations]?

A. She said that I was touching her all over the place.

Q. That was in that meeting [with Nancy, Swindle, D.D. and E.W.]?

A. Yes. Up her shirt, down her pants. Yes, that was at the meeting.

Q. And what did you say then to that?

A. I said that she was lying.

After the defense rested, the State called E.W. as a rebuttal witness. Before questioning commenced, Craun's counsel raised the following objection:

[DEFENSE COUNSEL]: So that the record is clear, I would like to show an objection to this witness giving any testimony in this case based upon the fact that the Court's prior ruling on the Motion to Sever these counts. And that to bring this in would be highly prejudicial to our client. It likely would violate his right to due process under the State and the Federal Constitution. We also think that it is contrary to the Indiana Rules of Evidence. And I'm happy to show a continuing objection so that we don't have to disrupt things. I know that the Court of Appeals doesn't always smile on that but otherwise I have to object to every question that's asked. It's [sic] seems like that wold [sic] be pretty disruptive.

[PROSECUTOR]: I would acknowledge that there is a continuing objection so that that does not happen.

THE COURT: Also so that the record is clear, that the Defense objects to any [Indiana Rule of Evidence] 404B evidence for any purpose.

[PROSECUTOR]: I would just ask the Court to note it's [sic] ruling that the Court has found that this is relevant under the Contrary Intent exception of 404B. And that it has found the probative value of the evidence is not outweighed by the prejudicial impact.

THE COURT: I hope that I made that clear previously. But if that's the case, the Court finds that the probative value does exceed the prejudice that will be experienced by the defendant. You can proceed.

At Craun's request, the trial court also applied "the same objection to any testimony from [D.D.]" E.W. testified that Craun had touched her breasts and vagina under her clothes and that he had never tickled her before. D.D. testified that Craun had touched her chest "straight up [her] shirt" and had touched her bottom with one hand "straight down [her] pants." The State also called H.D. as a rebuttal witness. H.D. testified that Craun did not tickle her on June 25, 1999; that Craun had tickled her "high on [her] leg" before; and that Craun's touching was different from tickling "[b]ecause when he was tickling me, he didn't touch me in the area that he ... that he was touching me," i.e., her vagina and her chest.

After the close of evidence, the trial court read the following instruction to the jury:

or he can tell the truth. And that's ... and to state ... and you know, our view is that his testimony was that on the June 25th allegation that they ... he and [H.D.] were in bed together. That he did tickle her and that she left. And ... and I guess I'm still struggling with how that opens the door to everything else when he doesn't say that I accidentally

rubbed her in the fashion that Nancy described. Or that... I mean, he denied that he had any sexual touching at all. There's no evidence right now that he ever touched her underwear. I mean that's not in the record. Craun's counsel did not offer a specific objection to the trial court's ruling at this time.

Evidence has been introduced that the Defendant was involved in a wrongful conduct other than those charged in the information. This evidence has been received solely on the issue of Defendant's intent or absence of accident. This evidence should be considered by you only for the limited purpose for which it was received.

The jury subsequently found Craun guilty as charged.

### Discussion and Decision

Craun asserts that the trial court erred in admitting evidence of his alleged molestations of D.D. and E.W. In particular, Craun argues that the evidence lacked probative value and "was extremely prejudicial and affected the outcome of the case" and thus should have been excluded under Indiana Evidence Rule 404(b).

The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon abuse of that discretion. *Johnson v. State*, 671 N.E.2d 1203, 1205 (Ind. Ct.App.1996), *trans. denied* (1997). Indiana Evidence Rule 404(b) provides in pertinent part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." In evaluating the admissibility of evidence under Rule 404(b), a trial court must

(1) decide if the evidence of other crimes, wrongs, or acts is relevant to a matter other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.[9] When inquiring into relevance, the court may consider any factor it would ordinarily consider under Rule 402.[10] These may include the similarity and proximity in time of the prior bad act to the charged conduct, and will presumably typically include tying the act to the defendant.

*Hicks v. State*, 690 N.E.2d 215, 219 (Ind. 1997) (footnote omitted). "In short, if the evidence bears on some issue other than criminal propensity and clears the balancing hurdle of Rule 403, it is admissible." *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind. 2000). We will affirm the trial court's decision to admit evidence of prior bad acts if it is sustainable on any basis in the record. *See Barker v.State*, 695 N.E.2d 925, 930 (Ind.1998).

The State observes that Craun failed to object to the prosecutor's questions to him regarding E.W.'s accusations and claims that he "has waived this issue on appellate review," citing *Small v. State*, 736 N.E.2d 742, 748 (Ind.2000) (acknowledging that "no error is preserved for appeal where there was no objection interposed at the time of the action complained of"). An authority that more precisely articulates the State's waiver claim is *McCovens v. State*, 539 N.E.2d 26, 30 (Ind. 1989), in which our supreme court stated that "[a]ny error in the admission of evi-

---

9. Indiana Evidence Rule 403 provides in relevant part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."

10. Indiana Evidence Rule 402 provides, "All relevant evidence is admissible, except as oth-

erwise provided by the United States or Indiana constitutions, by statute not in conflict with these rules, by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible."

dence is not prejudicial, and therefore harmless, if the same or similar evidence has been admitted without objection or contradiction." We cannot conclude, however, that Craun's testimony is sufficiently similar to E.W.'s and D.D.'s testimony to justify waiver. Craun merely testified that E.W. had falsely accused him of touching her inappropriately, whereas both E.W. and D.D. testified that he had in fact touched them inappropriately. Thus, E.W.'s and D.D.'s testimony was far more prejudicial than Craun's, and we must now determine whether it was admissible under Evidence Rule 404(b).

Under the first prong of the aforementioned standard, we must determine whether the evidence of Craun's alleged "bad acts" is "relevant to a matter at issue other than [his] propensity to commit the charged act." *Hicks*, 690 N.E.2d at 221. The State contends that the evidence is admissible to show Craun's motive and intent. The trial court instructed the jury that the evidence had "been received solely on the issue of [Craun's] intent or absence of accident." We cannot conclude, however, that E.W.'s and D.D.'s testimony was admissible for these or any other permissible purposes under Rule 404(b).

■■■ Assuming, *arguendo*, that Craun's motive was ever at issue, we are at a loss to determine how his alleged

touching of E.W. and D.D. is relevant to his motive for touching H.D. *Cf. Sloan v. State*, 654 N.E.2d 797, 802 (Ind.Ct.App. 1995) ("Because Sloan's motive and intent were not actually at issue, neither may serve as an excuse for the admission of his extraneous bad acts.").[11] As for intent, Craun correctly states that this Rule 404(b) exception "will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent." *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind.1993). Craun contends that he did not affirmatively present a claim of contrary intent by stating that he tickled H.D.'s upper thigh, since he never stated that he touched her vagina, either accidentally or intentionally. We agree. Had Craun been accused of and charged with fondling H.D.'s upper thigh with intent to arouse or satisfy his sexual desires, we might reach a different conclusion, but such is not the case here. As for absence of accident, we reiterate that Craun never stated that he touched H.D.'s vagina, either accidentally or intentionally.[12]

Simply put, E.W.'s and D.D.'s testimony, "if relevant at all, shows a propensity for [child molesting], which is precisely what is prohibited by the Rules of Evidence." *See Ortiz v. State,* 741 N.E.2d 1203, 1208 (Ind. 2001) (evidence of defendant's criminally

---

11. *See* BLACK'S LAW DICTIONARY 1014 (6th ed. 1991) ("In common usage intent and 'motive' are not infrequently regarded as one and the same thing. In law there is a distinction between them. 'Motive' is said to be the moving course, the impulse, the desire that induces criminal action on part of the accused; it is distinguished from 'intent' which is the purpose or design with which the act is done, the purpose to make the means adopted effective.") (citation omitted).

12. In *People v. Thomas*, 20 Cal.3d 457, 143 Cal.Rptr. 215, 573 P.2d 433 (1978) cited by the dissent regarding the absence of mistake exception under Rule 404(b), the victim testi-

fied that her father had fondled her breasts and vagina; the defendant admitted to touching his daughter's chest but claimed that he did so to apply cold medication. *See id.* 143 Cal.Rptr. 215, 573 P.2d at 443 (Clark, J., dissenting) Thus, Justice Clark reasoned, "[b]y 'acknowledg(ing) the physical touching of the child but assert(ing) his innocent intent' defendant placed his intent in issue, enabling the People to elicit the [prior bad acts testimony]." *Id.* (parentheses in original). Given that Craun never admitted to touching H.D.'s vagina, we do not find *Thomas* persuasive here.

reckless attack on third person was inadmissible to show his intent to kill victim); *see also* Ind. Evidence Rule 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").[13] Craun's alleged inappropriate touching of E.W. and D.D. did not make it more or less probable that he touched H.D. with the intent to "arouse or satisfy" his sexual desires under Indiana Code Section 35–42–4–3. *See Ortiz,* 741 N.E.2d at 1208.[14] Additionally, Craun's categorical denial of E.W.'s accusations did not make it more or less probable that his apology to H.D. constituted an admission of wrongdoing.

■ Even if the challenged testimony was relevant to a matter other than propensity, its negligible probative value was substantially outweighed by the danger of unfair prejudice under Evidence Rule 403. The testimony of E.W. and D.D. served only to demonstrate Craun's criminal propensity and did nothing to assist the jury in deciding a matter at issue *vis-à-vis* his alleged molestation of H.D. The State could have recalled (and in fact did recall) H.D. on rebuttal to confirm that she knew the difference between tickling and inappropriate touching and that Craun did not tickle her on the upper thigh on the evening of June 25, 1999. The jury was free to judge the credibility of Craun, H.D., Nancy, and Swindle and weigh their testimony in determining whether Craun molested H.D. The trial court thoughtfully and conscientiously engaged in the two-step determination required by *Hicks* and instructed the jury as to the limited purpose for which the testimony could be considered, but we must conclude that the court abused its discretion in admitting E.W.'s and D.D.'s unfairly prejudicial and minimally probative testimony.

■ The State contends that the court's error in admitting this evidence, if any, was harmless and characterizes the

**13.** *See also Wickizer,* 626 N.E.2d at 799 (stating that Evid.R. 404(b) "does not authorize the general use of prior conduct evidence as proof of the general or specific intent element in criminal offenses. To allow the introduction of prior conduct evidence upon this basis would be to permit the intent exception to routinely overcome the rule's otherwise emphatic prohibition against the admissibility of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith."); *Sundling v. State,* 679 N.E.2d 988, 993 (Ind.Ct.App.1997) ("Further, this court has stated that we view Evid.R. 404(b)'s exceptions to the rule excluding evidence of the accused's extraneous bad acts as examples of legitimate purposes for which evidence of such acts may be offered into evidence, and not as an inventory of excuses used to justify the admission of that type of evidence when the true purpose is to prove the accused's bad character.") (citing *Sloan,* 654 N.E.2d at 803).

**14.** *See also U.S. v. Has No Horse,* 11 F.3d 104, 106 (8th Cir.1993) (concluding that testimony of "two teen-aged girls" who alleged that "appellant had made sexual advances toward them" was "relevant to appellant's credibility and his intent, knowledge and scheme or plan with respect to the crimes with which he was charged [aggravated sexual abuse and sexual abuse of a minor] but only insofar as those acts tended to show a propensity to commit such acts. Rule 404(b) flatly prohibits the admission of other crimes evidence for this purpose.") (cited and quoted in ROBERT LOWELL MILLER, JR., 12 INDIANA PRACTICE § 404.232 at 450–51 n. 29 (2d ed.1995)); *U.S. v. Yellow,* 18 F.3d 1438, 1440 n. 2 (8th Cir.1994) (concluding that district court did not abuse its discretion in admitting evidence of defendant's past sexual abuse of his siblings, the victims of the charged offense; "We are far more hesitant to affirm the admission of evidence of prior sexual acts or crimes committed against persons *other than* the victim of the charged offense.") (citing, *inter alia, Has No Horse* ) (emphasis added).

remaining evidence of Craun's guilt as overwhelming. *See* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial right of the parties."); *see also* *Roche v. State*, 699 N.E.2d 752, 756 (Ind. Ct.App.1998) ("This court may determine that improperly admitted evidence did not have a significant impact on the verdict when there is overwhelming evidence of guilt."). We cannot agree. Since there is no independent evidence of Craun's guilt, the instant case boils down to a credibility contest between Craun and the State's witnesses. "[R]eversal is required if the record reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict." *Id.* E.W.'s and D.D.'s allegations demonstrated Craun's propensity for child molesting, and we must conclude that this evidence prejudicially impacted the jury and contributed to the guilty verdict, notwithstanding the trial court's instruction. *See Sundling v. State*, 679 N.E.2d 988, 994 (Ind.Ct.App.1997) ("Although the trial court instructed the jury as to the limited purpose for which the evidence [of defendant's molestation of three other children] could be considered, we cannot say that the impact that the improperly admitted testimony likely had on the mind of the average juror was significantly lessened.").

 As a final consideration, we note that

> [d]ouble jeopardy forbids a retrial—even where the defendant requests it as here—if the reviewing court concludes that the evidence is legally insufficient to support the conviction. Evidence is sufficient if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty

beyond a reasonable doubt. In this review, we do not reweigh evidence or assess the credibility of witnesses.

*Thompson v. State*, 690 N.E.2d 224, 237 (Ind.1997). (citations omitted). "A victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting." *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind.2000). However,

> [m]ere touching alone is not sufficient to constitute the crime of child molesting. The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points.

*Id.* (citations omitted).

 Here, H.D. testified that Craun rubbed her chest, vagina, and bottom under her clothes and did not, as he claimed, tickle her upper thigh. Thus, there is sufficient evidence from which a jury could find beyond a reasonable doubt that Craun touched H.D.'s chest, vagina, and bottom with the intent to arouse or satisfy his sexual desires. *See Lockhart v. State*, 671 N.E.2d 893, 903 (Ind.Ct.App.1996) ("[T]he intent to arouse or satisfy sexual desires may be inferred from evidence that the accused intentionally touched a child's genitals."); *see also Thomas v. State*, 612 N.E.2d 604, 605 (Ind.Ct.App.1993) (evidence deemed sufficient to support defendant's child molesting convictions where he "frequently grab[bed his three daughters'] breasts and buttocks *over* their clothes" and daughter testified that while she was clothed he would "rub her breasts, vaginal area and buttocks" and laugh, "as if he found the touching and the girl's reactions amusing") (emphasis added), *trans. denied.*

We therefore reverse and remand for a new trial.

Reversed and remanded.

BAILEY, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

I believe the trial court acted within its discretion in admitting the prior bad act evidence, and, accordingly, I respectfully dissent.

Probably no rule of evidence presents a greater challenge for trial counsel and trial and appellate courts than that posed by Indiana Rule of Evidence 404(b). Indeed, in *Lannan v. State*, 600 N.E.2d 1334 (Ind. 1992), our supreme court noted that the federal counterpart of the rule "has generated more reported decisions than any other rule." *Id.* at 1340. Similarly, the United States Court of Appeals for the Seventh Circuit has observed: "If the evidentiary rules were ranked in accordance with the controversy they engender, Rule 404(b) would stand near the top." *United States v. Leight*, 818 F.2d 1297, 1301 (7th Cir. 1987), *cert. denied*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987), quoted in MILLER, 12 INDIANA PRACTICE § 404.201, n. 7.

Rule 404(b) prohibits the admission of evidence of prior bad acts to prove the character of the defendant to show that the defendant acted on the occasion at issue in conformity with that character; that is, that the defendant, as shown by the prior bad acts had the propensity to act in ways consistent with such acts.

Such evidence is allowed for other purposes, such as motive, intent, and absence of mistake. *Lannan*, 600 N.E.2d at 1339. On the one hand, we allow such evidence under appropriate circumstances to show intent, motive, absence of mistake, et cetera. On the other hand, we disallow bad act evidence to show propensity; we say that if such evidence is offered only to prove that the defendant's charged conduct conforms with the defendant's prior bad acts—"the forbidden inference"—it is inadmissible. *See Hardin v. State*, 611 N.E.2d 123, 129 (Ind.1993).

It should be noted that the reason that the inference is forbidden is not because the inference is not reasonable, but because it is.[15] The reason the inference is forbidden is because of a value judgment that the prejudice of the prior bad acts substantially outweighs the probative value of such evidence where the evidence is used to prove the commission of the act in question.[16] Where it is used for another purpose, as for example where the defendant makes a claim of contrary intent, the balance is struck differently, and such evidence is admitted even though the probative value of such evidence is inferential.

Prior bad act evidence is probative of intent on the occasion at issue only through inference. The inference is that because the defendant had the requisite malevolent intent in the past it is more likely that he had the same intent on the occasion of the charged conduct. Similarly, in the case of motive, absence of mistake, common plan and so forth, the proba-

---

**15.** Indeed, Judge Warren D. Wolfson of the Illinois Appellate Court has written: "The [prior bad act] evidence is not barred because it is irrelevant. On the contrary, it is barred because it is too relevant. It invites potential misuse." Wolfson, "Evidence Advocacy: The Judge's Perspective," 28 *Litigation* 3 (Fall 2001).

**16.** It is interesting that the Federal Rules of Evidence upon which Ind. Rule Evid. 404(b) is based now make a different value judgment and allow conformity evidence of similar offenses in sexual assault and child molestation cases for its bearing on any matter to which it is relevant. *See* F.R.E Rules 413, 414, and 415.

tive value of the prior bad act evidence is inferential. When used for these purposes, however, the inference is permitted. Only when used to prove character and action in conformity therewith is the inference forbidden; it is not forbidden when used "for other purposes."

Here, the probative value of the prior bad act arises from the inference that because Craun committed similar acts of child molestation in the past, his claim of mistake in the present instance is less likely than it otherwise would be. Thus, the prior bad act evidence is not being used to prove that Craun committed the acts of molestation ("the forbidden inference") but to disprove that his claims that all he had done was tickle the child victim and that she was mistaken when she claimed to have been molested—the permitted inference. Indeed, this case is very similar to *People v. Thomas,* 20 Cal.3d 457, 143 Cal.Rptr. 215, 573 P.2d 433 (1978) (Clark, J., dissenting) cited by our supreme court in *Lannan.* In *Thomas,* the defendant accused of molesting his daughter claimed that he was merely rubbing vaporizing cream on her chest for treatment of a cold. The dissenting opinion of Justice Clark argued that testimony of the defendant's other daughters that they, too, had been molested by their father was admissible to prove the defendant's true intent and absence of mistake. Our supreme court agreed, stating: "Evidence of prior sex offenses—charged or uncharged—may also be admissible under Rule 404(b) to prove absence of mistake." *Lannan* at 1340.

So, too, here, I believe Craun's claim that H.D. mistook his tickling for something more sinister was inferentially less likely when viewed in the light of the prior bad act evidence that Craun touched other young girls inappropriately. The evidence was not used to prove the commission of the act, but to disprove Craun's claim of mistake. As such, the inference to be drawn was not forbidden, but permitted. I believe the admission of the prior bad act evidence was proper and would affirm the conviction.