**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Mar 31 2014, 9:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERRICK R. WOODS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1307-CR-379 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1211-FD-270

**March 31, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, Derrick Woods (Woods), appeals his conviction for failure to return to lawful detention, a Class D felony, Ind. Code § 35-44.1-3-4.

We affirm.

ISSUE

Woods raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by admitting evidence that Woods had been tased prior to his arrest.

FACTS AND PROCEDURAL HISTORY

On September 13, 2012, Officer Timothy Nosich (Officer Nosich) and Officer Mark Ashcraft (Officer Ashcraft) of the Munster Police Department arrested and handcuffed Woods.[1] Thereafter, Officer Ashcraft transported Woods to the Munster Police Department. Upon arrival, Officer Ashcraft assisted Woods out of the vehicle, but Woods slumped over, fell on his knees and complained of chest pains. On seeing this, Officer Ashcraft called for an ambulance and Woods was taken to the Munster Community Hospital (Hospital). Pursuant to the policy of the Munster Police Department, Woods remained handcuffed during his transport to the Hospital and Officer Ashcraft followed the ambulance in his police vehicle. At the Hospital, Officer Ashcraft read Woods the Prisoner Medical Leave Form, which primarily conveyed that Woods was still in custody and at no point was he supposed to leave the Hospital. Woods indicated to Officer Ashcraft that he

---

[1] The record shows that the trial court granted Woods his three pre-trial motions in *limine*. The motions had sought to exclude his prior criminal acts, details leading to his arrest, and his flight from arrest. This opinion will therefore not delve into the details or acts preceding his arrest and will only focus on Woods failure to return to detention.

2

understood the terms and conditions of his custody and thereafter signed the form. On the next day, September 13, 2012, the Hospital contacted the Munster Police Department to report that Woods had left the Hospital and he was believed to have been wearing a hospital gown. Munster Police Department had retained Woods' personal property including his wallet, shoes, some credit cards, and his ID.

On November 8, 2012, the State filed an Information charging Woods with Count I, failure to return to lawful detention, a Class D felony, I.C. § 35-44.1-3-4(c). The trial court issued a warrant for his arrest on the same day. Woods was arrested on November 20, 2012. On May 6, 2013, Woods' trial was held and the jury found him guilty as charged. On June 27, 2013, the trial court sentenced Woods to nineteen months in the Indiana Department of Correction. Woods received credit for 219 days spent in confinement.

Woods now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

I. *Standard of Review*

The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2005), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id.* This court will not reverse convictions based on an improper admission of evidence where admission of that evidence is harmless error. *Turben v. State*, 726 N.E.2d 1245, 1247 (Ind. 2000). Evidence is harmless if there is sufficient independent evidence of guilt such that there is no substantial likelihood that

3

the improper evidence contributed to the conviction. *Meadows v. State,* 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003), *trans. denied.*

## II. *Admission of Evidence*

Before trial, Woods filed a pre-trial motion in *limine* asking the trial court to prevent the State from inquiring about details leading to his arrest. The trial court granted Woods' motion. However, during trial, Woods introduced evidence relating to his arrest during his direct examination. Thereafter the following exchange took place during Woods' cross-examination:

> [State]: [Woods] you talked about suffering from shortness of breath after you were arrested by Officer Nosich, correct?
> [Woods]: Exactly.
> [State]: When did you first start experiencing the shortness of breath?
> [Woods]: Right away. Right away I was experiencing, but, like I said, I thought it was just from the situation at hand. From just being excited from me and Officer Nosich's conversational contact.

(Transcript p. 111). At that point, the State approached the bench, and a sidebar conference was conducted outside the presence of the jury. The State argued that Woods had "opened the door into why it is that he was suffering from shortness of breath." (Tr. p. 112). In response, Woods' counsel stated that "[a]ll he is doing is explain[ing] to the jury what he felt, and that's all in the medical records. I don't think we need to go into any running, because to a point it's not the running, it's the taser which had his heart beating irregularly." (Tr. p. 112). The trial court noted that Woods had opened the door to his motion in *limine* by testifying as he did. In the end, the trial court ruled that "[y]ou can't get into fleeing, but you can get into the fact that during the arrest he was tased, and that explains the

medical condition that he may be suffering from." (Tr. pp. 113-14). Continuing cross-examination, the following exchange took place:

> [State]: During your interactions with Officer Nosich prior to your arrest, you were tased by Officer Nosich, correct?
> [Woods]: Am I allowed to answer that?
> [Court]: Yes.
> [Woods]: Yes, I was.
> ***
>
> [State]: So when was the first time you reported shortness of breath?
>
> ***
>
> [Woods]: Right when he was pulling the taser prongs out of my side….and I was telling him I couldn't breathe.

(Tr. pp. 114-15)

In light of the above, Woods argues that, no expert evidence was given to explain that the shortness of breath and the chest pain was triggered by the taser. Therefore, he argues that the evidence was unduly prejudicial, since it created the impression to the jury that he was a "dangerous criminal who needed to be tased." (Appellant's Br. p. 6). In response to Woods' allegations, the State argues that because Woods failed to object to the overall admission of this evidence at trial, he has waived this issue on appeal. The State also adds that Woods invited the error he now complains of by clearly opening the door to the admission of this evidence when he testified at trial.

Looking at the record and the arguments before us, we find that the trial court did not abuse its discretion in admitting the evidence. We first note that "failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review

unless its admission constitutes fundamental error."[2] *Cutter v. State*, 725 N.E.2d 401, 406 (Ind. 2000). Because Woods failed to preserve this issue for appeal and has not demonstrated what prejudicial effect, if any, arose from the brief admission of this evidence at trial, his argument therefore fails.

Notwithstanding the waiver, Woods' argument also fails for the reason that he invited the error. Our supreme court has previously held that evidence that is otherwise inadmissible may become admissible when the defendant opens the door to questioning on that evidence. *Kubsch v. State,* 784 N.E.2d 905, 919 n.6 (Ind. 2003). In order to open the door, the evidence relied upon must leave the trier of fact with a false or misleading impression of the facts related. *Ortiz v. State*, 741 N.E.2d 1203, 1208 (Ind. 2001). Here, the trial court noted that Woods "was leaving the jury with a false impression" when he testified that he suffered from shortness of breath because he was "excited" from merely *talking* to Officer Nosich. (Tr. pp. 111, 113). Thus, the trial court allowed the State to question Woods on whether or not he was tased but ordered the State to reserve any questions relating to Woods fleeing from his arrest.

Finally, if any error occurred in the admission of evidence, we find it to be harmless. This court has held that evidence is harmless if there is sufficient independent evidence of guilt such that there is no substantial likelihood that the improper evidence contributed to the conviction. *Meadows,* 785 N.E.2d at 1122. Here, there was substantial evidence of guilt that the Officers had detained Woods. Woods was handcuffed and was taken to the

---

[2] Woods also does not allege fundamental error in his brief. Fundamental error is an error "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Willey v. State*, 712 N.E.2d 434, 444–45 (Ind. 1999).

Munster Police Department when he started complaining of chest pains. He was later taken to the Hospital for treatment. At the Hospital, Officer Ashcraft explained to Woods that he was still in custody and was not permitted to leave the Hospital unless accompanied by a law enforcement officer. Woods was obligated to call the Munster Police Department upon discharge. Woods was also not supposed to have visitors other than medical staff, his attorney, or law enforcement officers. Woods thereafter indicated to Officer Ashcraft that he understood the terms of his custody, and he signed the form. The next day, Woods left the Hospital without informing the Munster Police Department. Accordingly, we find that there was sufficient evidence from which the jury could have determined that Woods failed to return to lawful detention.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly admitted the evidence.

We affirm.

VAIDIK, C. J. and MAY, J. concur